97 So.2d 594

**Bruce RAY**

v.

**STATE.**

**5 Div. 490.**

Court of Appeals of Alabama.

Sept. 20, 1957.

Rehearing Denied Oct. 15, 1957.

Wilbanks & Wilbanks, Alexander City, for appellant.

John Patterson, Atty. Gen., Bernard F. Sykes and Geo. Young, Asst. Attys. Gen., for the State.

CATES, Judge.

On August 30, 1955, the Grand Jury of Coosa County indicted Bruce Ray for transporting five gallons or more of prohibited liquors (Code 1940, T. 29, § 187). Upon conviction by a petit jury on March 27, 1956, he was sentenced to two years' imprisonment.

The Attorney General has moved to strike the record and dismiss the appeal because the filing of the record here on August 18, 1956, was allegedly too late under Supreme Court Rule 37 (amended February 17, 1956, 263 Ala. xxi). Since there was a motion for new trial pending in the court below until June 20, 1956, the motion is denied both under Act No. 97, approved February 9, 1956 (Acts 1956, p. 143), and Koger v. State, 38 Ala.App. 476, 87 So.2d 552.

About four or five o'clock on a Sunday afternoon in the spring or early summer of 1955, Robert Ogburn, who lived in Coosa County on the road from Hissop to Socopatoy, noticed a red Ford automobile near his house. In Ogburn's best judgment, Ray was the driver of the car which came slowly down the road and stopped in the middle of the road in front of Ogburn's drive. After a lapse of ten minutes or so, Ogburn went out to the car and smelled whiskey before he got to the car. He found Ray asleep in the car with his head on the back of the seat. His testimony continued:

"Well, I tried to wake him to a certain extent to get him out of the road, and I couldn't wake him and one of my neighbors come along and we finally succeeded in getting him awake, and we tried to get him back off the road, or push him off the road and he insisted he was going on and did."

Thereupon, Ray drove off toward the house of Lawrence Estes which was three-fourths of a mile down the road. This was some thirty minutes after he had first stopped before Ogburn's home.

Estes testified he first saw the defendant under the steering wheel at about five o'clock on a Sunday afternoon in the late spring or early summer "right in front of my door on the highway." Ray stayed there for about two hours with "his arms on the steering wheel and his face laying down on his arms." Estes went out and shook him telling Ray to get out of the road or move on. This suggestion evoked the rejoinder that Estes go away and leave Ray alone. Estes was of the opinion Ray was under the influence of liquor.

The sheriff and a deputy came along and found Ray asleep in the front seat of his car which was still parked in the road at the Estes place. Ray and the officers engaged in conversation, the tenor of which concerned the nature of his offense. Thus, on cross-examination of the sheriff, we find:

"Q. What did you talk about in the car out where you arrested him, when you caught him? A. I don't remember anything much said; Bruce wanted me to make a public drunkenness charge against him and let him make

a bond and go on home; he said he had already slept his drunk off.

"Q. Is that all you talked about? A. He asked me to do it; wasn't too much said.

"Q. He asked you to make it public drunkenness? A. Yes.

"Q. What did you say? A. I told him we would see about that.

"Q. What else did you say? A. That is about all I remember we talked about.

"Q. When he asked you that and you told him we will see about that what did you mean? A. I was going to bring the car in and see what was in it.

"Q. That is what you meant, you would see about it. A. Yes.

"Q. Did you tell him in that same conversation I will see about what we can do for you? A. No."

Ray was taken to Rockford in the sheriff's car while the deputy drove Ray's car. Both cars were brought straight to the jail. The sheriff found 10 gallons of moonshine whiskey in the trunk of Ray's car. After the required predicates for the introduction of a confession had been laid, the sheriff testified Ray had told him (at the jail) that the whiskey was his and that he was carrying it home. Mr. Saxon, the sheriff, went on to say that at the time of this conversation Ray was "practically sober."

We do not construe the conversation at the scene of Ray's arrest as containing a promise by the sheriff that a public drunkenness charge would be the only one pressed against Ray. Moreover, if it had, we find nothing in the record to show that such a promise induced Ray to admit transporting moonshine.

 Ray's intoxication as affecting his ability to confess voluntarily is primarily a question of fact which addressed itself for admissibility to the trial judge and for credibility (and weight) to the jury. There is nothing in this record on which we can say the trial judge abused his discretion since we conclude that there must be shown a substantial impairment of the mind and will before drink can render a confession inadmissible. Thus, in Smith v. State, 25 Ala. App. 297, 145 So. 504, 505, we find Rice, J., saying:

"The rule, as we understand it, is that intoxication less than mania does not exclude a confession made during its continuance; if claimed and proved, it only goes to the weight and credibility to be accorded by the jury to the said confession. * * *"

See also Dixon v. State, 38 Ala.App. 395, 85 So.2d 156; 20 Am.Jur., Evidence, § 525; 22 C.J.S. Criminal Law § 828. And in the annotation 74 A.L.R., at p. 1104, we are cited to Rex v. Spilsbury, (1835) 7 C. & P. 187, 3 Nev. & M.M.C. 409, where the statement of a drunk prisoner was held admissible even though allegedly a constable seems to have got him drunk to loosen his tongue. As pointed out in Eskridge v. State, 25 Ala. 30, drink must have affected both the capacity of expressing and of speaking truly before it can, as a matter of law, render a statement inadmissible. While we, unlike the Tennessee court in Leach v. State, 99 Tenn. 584, 42 S.W. 195, do not adopt *in vino veritas* as a mixim of the law, yet we consider the trial judge has more latitude than in the case of the administration of a narcotic drug, e. g., Edwardson v. State, 255 Ala. 246, 51 So.2d 233.

 Ray argues that the testimony of Ogburn and Estes should have been excluded because their testimony, while making out a case of public drunkenness, did not show illegal transportation. This might be true but their testimony and the finding of the liquor in the trunk of Ray's car made out the corpus delicti which was needful before Ray's statement was admissible. In other words, before the confes-

sion, we could say that (a) Ray's car had been driven on a public highway first to Ogburn's house and then to Estes' house, and (b) it had more than five gallons of prohibited liquor in the trunk when taken over by the deputy sheriff, and (c) Ray was the only person observed in or about the car which was undisputedly his. Steel v. State, 37 Ala.App. 621, 73 So.2d 573. While it is not needful to determine whether this evidence, without more, sufficiently shows Ray's participation (for closely analogous cases without confessions see Clark v. State, 23 Ala.App. 467, 126 So. 896 [car stuck in mud], and Green v. State, 37 Ala. App. 509, 72 So.2d 107 [car out of sight during chase]), we do consider it enough to allow the reception of the confession. Upon the introduction of the confession, a prima facie case for the jury was made out.

The following charge was refused Ray:

"I charge you, gentlemen of the jury, that if there is a reasonable doubt in your minds that the defendant was drunk or that he did not know what he was doing or saying when the purported confession was made, then in that event you must find for the defendant."

Since the proposed instruction failed to specify drunkenness partaking of mania (see above), we do not put the trial court in error. Further grounds might be cited from Ledbetter v. State, 21 Ala.App. 582, 110 So. 478 (no error to refuse charge predicating acquittal on confession being involuntary); Odom v. State, 253 Ala. 571, 46 So.2d 1 (misleading since admissibility for trial judge).

■ Finally, Ray claims error because he was not given a mistrial because two of the jury, on being polled, did not stand to the verdict first brought in. The trial judge properly obeyed the command of Code 1940, T. 30, § 101, when he sent the jury back for further deliberation.

We have reviewed the record and find it free of any substantial error.

Affirmed.