205 So.2d 916

**Homer WARREN**

**v.**

**STATE.**

**6 Div. 201.**

Court of Appeals of Alabama.

Nov. 7, 1967.

Rehearing Denied Dec. 19, 1967.

---

Richard A. Thompson, Tuscaloosa, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Homer Warren was tried in the Circuit Court of Tuscaloosa County, Alabama, on a charge of murder in the first degree. He was found guilty of murder in the second degree and sentenced to twelve years' imprisonment.

The killing occurred around noon on Sunday, August 15, 1965. The defendant was arrested, incarcerated, and a confession taken from him in the jail around 5:00 or 5:30 the same afternoon.

Frank Barger was the homicide victim. There were no eye witnesses.

The testimony concerning the crime and the taking of the confession is as follows:

The defendant, thirty-eight years old, with a third-grade education, was born on a farm in Mississippi, but for the past few years had been living with his mother in Chicago. In May or June of 1965, he came to the North River area of Tuscaloosa with Robert Sullivan and was staying with Abraham Sullivan, the father of Robert Sullivan. On August 15, Abraham Sullivan was in Texas and defendant was alone in the house during Abraham Sullivan's absence.

Mrs. Virginia Sullivan, Robert's wife, testified she lived a fifth of a mile from Abraham Sullivan. About 12:30 on the day in question the defendant came to her home and told her he thought he had killed somebody, but didn't know who it was, and said "You go and see." She told him to wait until her husband came home and they would go together. She had heard a shot ten minutes before defendant came to her house. Defendant talked "crazy"; he was staggering; there were fresh scratches or bruises on both sides of his face, and blood was coming from one of the bruises. Her husband arrived in about fifteen minutes, and, after she told him what defendant had

said to her, they drove to Abraham Sullivan's house.

Robert Sullivan testified that, when he returned home and his wife told him what defendant had said, they went to Abraham Sullivan's house, and he went in the house and found the body of Frank Barger on the bed. Defendant was in the yard, stooping over a bucket of tar, chewing on tar. He "looked wild", was shaking, he was "wallowing his eyes back in his head", and he resembled the way other people looked that he had seen who were suffering from delirium tremens. Predicates were laid for the admission of defendant's statements to the witness as he entered the house and when he came out of the house. As he went in the house witness asked where Frank was and defendant said "In there on the bed." As he came out of the house, he asked defendant why he shot Barger and defendant said he didn't know. Later he heard defendant tell Whitfield Cunningham that Frank was trying to kill him. Defendant never used the term, "I killed Frank Barger." Two weeks later, when he saw defendant in jail, defendant still looked dazed and a little bit crazy.

Gene Boswell, employed as a criminal investigator in the sheriff's office, testified he arrived at Abraham Sullivan's house about 2:00 or 2:30 and saw deceased's body on the bed; that he talked with the defendant in the jail about 5:00 or 5:30 the same afternoon. On direct examination he testified defendant was drinking. "It was about medium. * * * No, sir, I wouldn't say he was drunk but he had been drinking." He noticed nothing unusual about defendant's demeanor and appearance except "nervousness and appearance of being intoxicated." His speech was coherent. He appeared in control of his faculties and aware of what he was saying. On cross examination the witness stated the defendant was under the influence of alcohol, and, if defendant had been driving an automobile under the condition he described, witness would have arrested him for driving while intoxicated. This question was then asked:

"So then he didn't have full control of his faculties if he was under the influence of alcohol." The witness answered: "I wouldn't think so, * * * you could tell he was under the influence of alcohol." On redirect examination he stated defendant "was not drunk. He was intoxicated. * * * You could understand him."

At this time and place defendant made a statement to him. Boswell identified himself as an officer and asked defendant if he would like to make a statement about it, and he said he would. "I asked him if he did it and he said yes, and so from that I started."

The witness testified he did not "use coercion", did not offer him a reward or tell him it would be better for him to make a statement; that he "informed him of his constitutional rights, that he didn't have to make a statement, that he was entitled to an attorney, and anything that he would say could be used against him and that it would be better if he wanted to get him an attorney and he said no, he would go ahead and tell me about it."

The witness was then examined on voir dire. He stated that defendant was intoxicated; that there was no doubt about his being under the influence of alcohol. He was in the room with defendant thirty to forty-five minutes. He reduced the statement to writing, but did not read it to defendant. Defendant looked at it for a short time and then signed it.

The confession, introduced in evidence over defendant's objection, is substantially as follows: Defendant and deceased, Frank Barger, were at Abraham Sullivan's house where defendant was staying; that Frank Barger had taken a 410-gauge shotgun belonging to Abraham Sullivan and defendant told him to put it back, but deceased said he wouldn't do it and if defendant came back in the house deceased would blow defendant's head off; that defendant then got a twelve-gauge shotgun, put a shell in it, and went in the bedroom where Barger was and asked if he was going to put the shotgun

back. The deceased said he was not and that he would kill defendant if he didn't get out of there, and defendant shot him; that after shooting him he tried to help him but saw that he could not, and he went to the creek and threw the gun in; that he then went to Robert Sullivan's house and told him what had happened.

Deputy Sheriff Roy Phillips, called as a witness for defendant, testified defendant was drunk when he booked him at the jail, between 3:30 and 4:00 o'clock the afternoon of the homicide.

The defendant was indicted for the murder of Frank Barger on September 1, 1965. Defense counsel was appointed by the court on September 9, 1965, and defendant was arraigned and pleaded not guilty and not guilty by reason of insanity on December 7, 1965.

On September 9, 1965, on application of defendant's court-appointed attorney, the trial judge directed the Superintendent of the Alabama State Hospitals to convene a lunacy commission under the provisions of Title 15, Sec. 425, Code 1940. The report of the commission, dated October 20, 1965, recites:

"After full study and a long period of observation, it is the opinion of each of us separately, and our opinion jointly and collectively, that the said Homer Warren, a single man—age thirty-eight, has for a number of years been heavily addicted to the use of alcohol, and information obtained from other institutions indicates that he has been hospitalized several times for Acute Brain Syndrome Due to Alcohol (delirium tremens.) Since admission in Bryce Hospital there has been no evidence of mental disorder or an insane state, and we feel that he ' is presently sane and competent. It is also our opinion that he was sane and competent at the time of admission in Bryce Hospital, *and it is our further opinion that he was heavily under the influence of alcohol and to such a degree that he could not make good judgment at the time of the com-* *mission of the crime for which he is charged."* (Emphasis supplied.)

The deposition of Dr. T. H. Patton, Clinical Director of Bryce Hospital, and a member of the lunacy commission, was introduced in evidence. Dr. Patton testified the defendant was admitted to Bryce on September 10, 1965, and was released on November 22, 1965; that correspondence with other mental hospitals, which he listed, revealed that defendant had been admitted to at least four other mental hospitals, because of acute delirium tremens; that the lunacy commission's official diagnosis and evaluation of defendant's condition at the time of the alleged offense was "acute brain syndrome associated with alcohol intoxication, delirium tremens"; that he was suffering from delirium tremens and did not know what he was doing.

Mr. James T. Webb, staff psychologist for the Tuscumbia Mental Clinic, and formerly a psychologist at the Psychology Clinic at the University of Alabama in Tuscaloosa, testified he examined the defendant in December of 1965, and found him to be a borderline mental defective, and it was his conclusion that his condition on August 15, 1965, was "psychotic reaction, schizophrenic type."

The defendant testified he had been drinking heavily for several years, and quite heavily for a few days prior to the offense for which he is charged. On that Sunday morning he walked over to Melvin Barger's house. Melvin Barger is Frank Barger's father, and Frank was living with his father. The defendant got two quarts of corn whiskey at Barger's and drank one quart while he was there. He and Frank then came back to Abraham Sullivan's house, taking the second quart of whiskey with him. The last thing he remembered was when he and Frank were sitting on the porch drinking. He remembered nothing that happened the rest of that day. He woke up in jail some time after Sunday. He did not remember signing the statement, but admitted the signature on it was his.

The general rule applicable to confessions obtained from persons under the influence of intoxicants is well stated as follows:

"* * * proof that the accused was intoxicated at the time he confessed his guilt of crime will not, without more, bar the reception of the confession in evidence. But if it is shown that the accused was intoxicated to the degree of mania, or of being unable to understand the meaning of his statements, then the confession is inadmissible." (Ann.: Intoxication of Accused at Time of Confession, 69 A.L.R.2d 361, 362, and see authorities collected.)

In People v. Schompert, 19 N.Y.2d 300, 279 N.Y.S.2d 515, 226 N.E.2d 305, the court said:

"Lack of awareness or understanding alone might be sufficient to exclude a confession in the rare case where it clearly appears that at the time of the confession the confessant was so intoxicated as to lack mental capacity, that is, he was unable to appreciate the nature and consequences of his statements. This, no doubt, is the 'mania' referred to in the older cases."

■ Our courts recognize the rule that proof of intoxication amounting to "mania" or such an impairment of the will and mind as to make the person confessing unconscious of the meaning of his words, renders a confession made by him while in such state inadmissible. Eskridge v. State, 25 Ala. 30; Smith v. State, 25 Ala.App. 297, 145 So. 504; Vinzant v. State, 28 Ala.App. 220, 180 So. 736; Ray v. State, 39 Ala.App. 257, 97 So.2d 594.

■ The proof clearly shows that defendant's intoxication amounted to mania, that is, he was so drunk as to be unconscious of the meaning of his words, and that such intoxication rendered inadmissible his confession.

■ The witness Boswell was asked these questions by the district attorney: "Was the statement he made to you free and voluntary", and, "And you say it was

free and voluntary." The witness answered, "Yes", to both questions. The question of whether a confession has been voluntarily made is for the court to determine. To allow a witness to state that the confession was freely and voluntarily made is a conclusion and the substitution of the witness's opinion for the judgment of the court. Jones v. State, 156 Ala. 175, 47 So. 100; Blythe v. State, 24 Ala.App. 142, 131 So. 457. While there was no objection to the above questions to the witness Boswell, Mrs. Sullivan, who testified previously, was asked whether the statements made by defendant when he came to her home were free and voluntary. Defendant's objection to this question was overruled.

This opinion does not pass on the responsibility or non-responsibility of defendant for the crime with which he is charged, but is limited solely to the improper reception of the confession.

The judgment is reversed and the cause remanded.

Reversed and remanded.

JOHNSON, Judge (dissenting).

The law of Alabama places the duty upon the trial judge, after hearing and evaluating all of the evidence admitted with reference thereto, to decide whether or not appellant's confession is admissible and further places the duty upon the trial jury to determine and pronounce the guilt or innocence of the appellant after hearing and considering all of the evidence under the rules of law given by the court, including the "confession". These general principles governing criminal practice have long been prevailing.

After reading and carefully considering all of the evidence, including the degree of intoxication of appellant, and the obvious findings of the trial court and the jury, respectively, in the light of the rules herein pronounced, it is my opinion that there was no reversible error in this record and that this cause is due to be affirmed.