275 So.2d 360

**Betty Ruth STEWART**

v.

**STATE.**

**7 Div. 176.**

Court of Criminal Appeals of Alabama.

March 20, 1973.

**682**

James F. Hinton, Gadsden, for appellant.

William J. Baxley, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

NEWTON B. POWELL, Circuit Judge.

The appellant, Betty Ruth Stewart, has brought this appeal from the Circuit Court of Etowah County, where she was convicted for second degree murder in the death of her husband, William Earl Stewart. The indictment charged first degree murder. The appellant entered a plea of not guilty and relied strongly on the theory of self defense and alleged inadmissibility of inculpatory statements purported to have been made by her following the death of her husband.

Without attempting to state all of the details of the evidence it appears that the appellant and the victim resided together as husband and wife on June 26, 1971 at their home in Gadsden, Alabama. They were at the home alone and both were

drinking intoxicating beverages. A quarrel arose between the appellant and the deceased and continued for several hours during the day. The quarrel terminated shortly before 7:40 P.M. in their bedroom with the victim having been shot one time with a small caliber pistol. The bullet entered the body in the abdominal area; it lodged in the area of the back doing damage to vital organs along its pathway. He was transported by ambulance to a hospital soon thereafter and received medical treatment including surgery. He died on June 28, 1971. There seems to be no controversy that the victim died as a result of the wound which he received on the 26th of June.

Immediately following the shooting police officers arrived at the scene. Testimony on the trial of the case taken outside the hearing of the jury for the purpose of determining its admissibility is to the effect that the police arrived at 7:40 P.M. after receiving a call that someone had been shot at this address. The officers identified themselves to the appellant; they did not take her into custody, but they administered the Miranda warning to her. The appellant appeared to be upset and "obviously had been drinking". In response to questions by the police officers the appellant related in substance that she and the deceased had been arguing all day, and that they got into an argument about her mother; that they were in bed, and the deceased kicked her out of bed; she got back in bed and the deceased got a pistol and offered it to her and told her that if she shot him she would go to the penitentiary. She then stated that she shot him.

The appellant was not taken into custody. They returned to appellant's residence on the following day according to the evidence offered by the State outside the hearing of the jury; on this occasion they did not take appellant into custody nor charge her with the offense, but they again administered the Miranda warning. On each occasion of the questioning the State elicited evidence from the police officers that no threats or promises or rewards or hope of rewards were offered to the appellant in order to obtain a statement from her, and that she stated that she understood her rights. On the second visit the State's evidence is that it appeared that appellant was under some sedation and she appeared to be intoxicated. In the presence of the officers on this occasion she drank some whiskey while she was talking to the officers. She appeared to understand the Miranda warning, she answered the officers' questions, she appeared to understand the questions, and she answered them about the same way she answered the questions on the previous day. The officer was of the opinion that she was not in a condition to sign a written statement. On this occasion she told the officers substantially the same story with reference to the shooting and the events which led up to it as was related to them on the previous day.

The defendant offered no testimony outside the hearing of the jury on the admissibility of the alleged confessions, except the cross-examinations of the State's witnesses. The Court allowed the statements to be received in evidence by the jury; the State's evidence before the jury was substantially the same on this issue as it was outside the hearing of the jury.

The appellant testified that on the night of the first visit of the officers after the victim had been taken to the hospital she was upset and when the officers questioned her she tried to answer "what they said. But, that was the only conversation we had". She stated that she told them the best she could when they asked her questions as to what happened. On the occasion of the second visit of the officers she stated that this visit was late at night and her mother had come to her home and had given her some nerve medicine which she had taken. She testified that she and her husband had purchased two half-gallons of whiskey on the morning of the day in question; one was for themselves and one for a friend of the victim. She testified further that there was about one-half of

their whiskey left when the officers first arrived; that she had consumed two drinks, and the victim had consumed the balance. The testimony is in conflict between the state and the defendant as to when the officers made the second visit to the residence of the appellant; she denies that she drank any whiskey in the presence of the police officers on the second visit.[1]

■ The appellant contends that inculpatory statements alleged to have been made by her which were introduced in evidence were inadmissible on the theory that she was so intoxicated when the statements were made as to invalidate any such statements if they were made. She cites Warren v. State, 44 Ala.App. 221, 205 So.2d 916 and Ray v. State, 39 Ala.App. 257, 97 So.2d 594 to sustain her position. The rule is correctly stated in Warren v. State, supra, as follows: "Our Courts recognize the rule that proof of intoxication amounting to 'mania' or such an impairment of the will and mind as to make the person confessing unconscious of the meaning of his words, renders a confession made by him while in such state inadmissible * * *." In Ray v. State, supra, this Court declared that the appellant's intoxication as affecting his ability to confess voluntarily is primarily a question of fact which addresses itself for admissibility to the Trial Judge, and for credibility and weight to the jury. The general rule followed by this jurisdiction governing the admissibility of statements on their voluntariness is that intoxication short of "mania" or such an impairment of the will and mind as to make the

person confessing unconscious of the meaning of his words will not render a confession inadmissible. Mack Bedingfield v. State, 47 Ala.App. 677, 260 So.2d 408 and cases cited therein. The fact that a person is much intoxicated does not necessarily mean that his reason is so far dethroned as to disable him from comprehending the effect of his admissions, or from giving a true account of the occurrence to which they have reference. Mack Bedingfield v. State, supra citing Eskridge v. State, 25 Ala. 30.

■ Our Supreme Court has held that the Trial Court's decision allowing a confession in evidence will not be disturbed unless it appears that it is palpably contrary to the great weight of the evidence. Fewell v. State, 259 Ala. 401, 66 So.2d 771. The voluntariness of an alleged confession is a question of law to be decided by the trial court and not the jury. When such testimony is offered preliminary proof should first be made showing the circumstances surrounding the alleged confession. This is properly done outside the hearing of the jury. The Court may hear evidence from both sides of the case on this issue. If the Trial Court determines the voluntariness of the confession such finding is entitled to great weight on appeal and will not be disturbed unless it appears to be contrary to the great weight of the evidence or manifestly wrong. McCord v. State, 48 Ala.App. 460, 265 So.2d 902 and cases cited therein.

■■ Upon a full consideration of the rules governing such evidence in this juris-

---

1. "The testimony of Officer Bone regarding the second confession states:
   "Q (By Mr. Henslee) Sergeant, did this woman know her name on this occasion?
   "A Yes, she did.
   "Q Did—in your conversation did she know she was married to Bill Stewart?
   "A Yes, she did.
   "Q In talking to her, did she appear to be rational in things she said to you?
   "A Yes, she did.
   "Q Was she able to get up and walk around on her own?

   "A Yes, she did.
   "Q All right. Now when you were giving the constitutional rights to her about them, did she appear to understand what you were saying?
   "A Yes, she did.
   "Q Okay. Now then. On this occasion then, it's your testimony that she appeared to know what she was doing, is that right?
   "A Yes, sir."

diction the Court is of the opinion that the question of the voluntariness of the alleged confessions was a question of law for the Trial Court; and we cannot say that the Trial Court acted against the great weight of the evidence on this issue, or that it abused its discretion in permitting the alleged confessions to go to the jury. The jury having received the alleged confessions became the sole judges of the credibility and weight to be afforded them.

In Warren v. State, supra, cited by the appellant, this Court reached the conclusion based upon the testimony of a psychiatrist who was Director of Bryce Hospital and an abundance of other evidence that the intoxication of the defendant amounted to mania; that is, that he was so drunk as to be unconscious of the meaning of his words. We do not reach that conclusion from the evidence produced on this issue in this case. We do not preceive that our holding here is inconsistent with the holding in Ray v. State, supra, cited by the appellant.

■■ It is insisted by the appellant that it was error to allow the witness, Bone, to testify that one of the statements by the defendant was made voluntarily. Ordinarily this type of testimony is not admissible. Warren v. State, supra. In this case the statement was made by the witness, Bone, outside the hearing of the jury, and we are of the opinion that no harm was done in view of the fact that the Trial Judge was acquainted with the law, and probably gave no effect to the statement. In addition to this there was no objection to the question or answer. We are of the opinion that the appellant suffered no injury from the statement.

■ At the trial of the case the defendant objected to alleged threats which the appellant had made against the deceased prior to the offense. We hold that threats by the accused directed toward the victim are admissible to show malice and criminal intent. Brooks v. State, 45 Ala.App. 196, 228 So.2d 24.

■ Objection was also made to allowing a witness to testify for the state when it was contended by the appellant that she had been in the Courtroom during the proceedings of the trial up to that point. The witness denied that she had been in the Courtroom during this time. Regardless of whether she had or had not been present during the trial of the cause preceding this incident this was a matter of discretion in the Trial Judge. Lawhorn v. State, 38 Ala.App. 543, 89 So.2d 690, cert. denied, 265 Ala. 92, 89 So.2d 693. We are of the opinion that the Trial Court did not abuse its discretion in this ruling.

■ We have considered the entire record under Code 1940, T. 15, § 389. From this examination we conclude that error is not made to appear. It follows that the judgment should be affirmed, and it is so ordered.

The foregoing opinion was prepared by Honorable Newton B. Powell, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of § 38, T. 13, Code 1940, as amended; the Court has adopted his opinion as its own.

The judgment below is hereby

Affirmed.

All the Judges concur.