321 So.2d 744

**Martis Errole EDWARDS, alias**

v.

**STATE.**

**6 Div. 951.**

Court of Criminal Appeals of Alabama.

Nov. 4, 1975.

James R. Shaw, Bessemer, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Quentin O. Brown, Jr., Asst. Atty. Gen., Birmingham, for the State.

DeCARLO, Judge.

Appellant was convicted of the murder of C. W. Higginbotham and sentenced to life imprisonment.

On November 21, 1974, Jimmy Bunn heard there had been trouble at the residence of his in-laws, Mr. and Mrs. C. W. Higginbotham. Around 11:00 P.M. he went to their store-home combination in the Adger Community of Jefferson County. Noticing the lights out and the doors locked, he called the authorities. After the sheriff's deputies arrived, Bunn kicked in the back door and they entered. In the living room he saw the bodies of his in-laws. Mr. Higginbotham was sitting on the couch and Mrs. Higginbotham was kneeling with her head in his lap.

About 1:00 A.M. on November 22, 1974, the deputy coroner arrived and upon examining the body of Mr. Higginbotham, observed four gunshot wounds. One in the center of the forehead, another in the lip, a third in the groin, and a graze-type wound under the right arm. He examined Mrs. Higginbotham and found two gunshot wounds in the head. He testified that an autopsy was performed and it was his opinion that a portion of the missile entered the brain, causing Mr. Higginbotham's death.

Sgt. Earl Robins of the Jefferson County Sheriff's Department arrived at the Higginbotham residence at about 1:10 A. M. and during his investigation found three spent cartridge casings on the bed and one under the night table in the bedroom. He recovered a bullet from a hole in the living room wall behind the couch where Mr. Higginbotham was sitting.

The same morning, Mr. Hansel Rogers, Jr., a member of the police department in Okolona, Mississippi, was traveling on Highway 45 Alternate, and saw a Volkswagen weaving on the road. It was 2:00 or 2:15 A.M. when he stopped the car and found Martis Edwards driving, accompanied by a four or five-year-old girl. He noticed the appellant had been drinking and saw a .22 caliber rifle on the floor of the car, which he removed.

The appellant did not have a driver's license and Rogers asked him to take an intoximeter test. He agreed and Rogers drove Edwards and the little girl to the jail about 2:30 A.M. A photoelectronic intoximeter test was administered and revealed a .173 reading.

After Edwards was arrested, he told Rogers to call the Jefferson County Sheriff's Department and see if he was not wanted in connection with two murders. Rogers called his chief who subsequently arrived and called the Jefferson County Sheriff.

Later that morning, Rogers stated he saw Sgt. Robins and Lt. Jacobs of the Jefferson County Sheriff's Department take the appellant and the rifle away.

About 2:50 A.M., Sgt. Robins received a call from the dispatcher; he and Lt. Jacobs then drove to Okolona, Mississippi. They arrived about 7:00 A.M. and saw the appellant thirty minutes later. Edwards did not appear to be under the influence of alcohol and seemed to be in possession of his faculties.

After appellant signed a form waiving his constitutional rights, Robins talked to him and reduced their conversation to writing. Edwards did not read the written statement, but remarked that it was true and signed it.

At the trial appellant objected to the statement but after a hearing outside the jury's presence it was admitted into evidence. The statement reads:

"Nov. 22, 1974

"My name is Martis Errole Edwards and I am 30 years old and I live at Rt. 1 Box 392 Adger, Alabama. I am making

this statement to Sgt. E. E. Robins at the Okolona, Miss. County Jail.

"On Wednesday night I was at my mother's and step-father's house at Route one, box 392 Adger. I had been having some trouble with my ex-wife, Bobby Edwards, over our baby girl. I had decided that I was not going to let my child grow up as I had to grow up. I did not have but $100.00 that I had been saving to get her away. While at my mother's house on this Wednesday night I made up my mind to get my step-father's car and guns and get my child away from there. The thought entered my mind at that time that if I had to I would kill both my step-father and mother if I had to in order to get their car and guns.

"On Thursday Nov. 21, 1974, I went to mother and step-father's store near Oak Grove. I entered the store and went on back to the living quarters in the rear. My mother was in the kitchen and my step-father was sitting on the couch in the living room. I was standing in the bedroom which is located between the kitchen and the living room. I removed a .22 Cal. Automatic rifle from a rack on the wall in the bedroom. My step-father was facing me on the couch watching television. I aimed the rifle between his eyes and shot him two times. My mother ran from the kitchen through the store to the living room and kneeled down beside my step-father. I raised the gun again and shot her four times. I then went to the front of the store and locked it and then removed a shotgun and two boxes of shells, the rifle, a box of rifle shells and a bottle of whiskey from the bedroom and left the house by the rear kitchen door. I got in my step-father's car and drove to my grandfather's and grandmother's house near there. My wife and baby girl were at their house. My wife and I started fighting and my grandfather took the shotgun away from me. I then got my child and left in my step-father's car.

"I do not remember what time I went to the store but I believe it was about 2:30 P.M. or 4:00 P.M. After I left my grandfather's house I drove to Columbus, Miss. and then to Okolona, Miss. I was on my way to Texas. While driving through Okolona, I was stopped by a policeman. While he was walking up to my car, I placed the rifle by my window and was planning on shooting him. Before he got to the car I changed my mind and decided not to run anymore.

"I have made this statement without any threats or promises made to me and it consists of five pages. I have had this statement read to me and it is a true statement to the best of my knowledge.

"Signed x (sgd) Martis E. Edwards

"Witness (sgd) E. E. Robins."

The State toxicologist testified that he compared the spent .22 caliber shells received from Sgt. Robins with those test-fired from the .22 caliber rifle recovered from appellant. It was his judgment that the spent shells were fired by the same rifle. He further stated that the bullets taken from the bodies were badly battered but identified them as .22 caliber.

Martis Edwards testified that prior to the shooting he had been living in the Higginbotham house and there had been quite a bit of trouble between his mother and step-father. On November 21, he had been drinking and after arriving at his mother's house, some questions arose concerning Edward's unemployment check and his mother told him to get out. When appellant and his step-father made plans to leave, his mother said Mr. Higginbotham had gone off many times before and that she would kill him before she allowed it to happen again.

The Higginbothams began to argue and while appellant was packing, two shots were heard. He turned and saw his mother go into the living room and kneel at his step-father's feet. The appellant stood in the hallway looking, and his mother said,

"come help me get this bastard out of here before someone comes in the store, he's dead." When appellant did not respond, she said, "I'll get his feet, you get his head. If you don't I'll kill you too." At that point, appellant picked up the rifle and shot his mother. Edwards stated she always carried a gun but he did not see it at that time.

After the shooting, appellant went to his grandparents and told his ex-wife what had happened. He then left with his daughter and while driving to Okolona, Mississippi, was stopped.

Edwards testified that he was "very well drunk" and did not remember talking to the Mississippi officers or to Sgt. Robins. He explained that before leaving he drank some beer and whiskey and that while driving to Okolona, Mississippi, he consumed three and one-half pints of whiskey.

## I

■ Appellant contends that it was error to admit his confession taken some five hours after his blood alcohol level had been measured at .173 on the intoximeter. Counsel argues that, assuming the normal rate of alcohol assimilation in the human body, in five hours the appellant would still have been "legally drunk" when the statement was taken. In substance, counsel is maintaining the confession was involuntary.

Whether a confession is voluntary is a question to be determined by the trial court. *Harris v. State,* 280 Ala. 468, 195 So.2d 521, and its judgment will only be disturbed upon a showing that it was "manifestly wrong." *Bonner v. State,* 55 Ala. 242.

The circumstances surrounding the taking of the alleged confession were shown in the testimony of Sgt. Robins. He testified that, at the time the statement was taken, Edwards was in control of his faculties and did not appear to be under the influence of alcohol. Further, the Mississippi officer testified that at 8:00 A.M. on the morning of the statement he saw Edwards with Sgt. Robins and in his opinion appellant was not intoxicated.

In this jurisdiction only proof of intoxication amounting to "mania" will render a confession inadmissible. *Stewart v. State,* 49 Ala.App. 681, 275 So.2d 360. See also: *Bedingfield v. State,* 47 Ala.App. 677, 260 So.2d 408.

The facts before the court did not indicate such an impairment and in our judgment the confession was properly admitted.

## II

■ Next appellant urges that the judgment should be reversed because of the improper argument of the Deputy District Attorney. He insists that the cumulative effect of the following statements was calculated to prejudice the minds of the jury and should not have been admitted.

"MR. REYNOLDS: '. . . . It makes me sick to my stomach to try a case of a man who's killed two people and—'

"MR. JORDAN: I object to that, if Your Honor please, he's not on trial for killing two people.

"THE COURT: Overruled.

"MR. JORDAN: We except.

.    .    .    .    .    .

"MR. REYNOLDS: . . . '. . . Martis Edwards killed his step-father, and wasn't any 'may it please The Court' and ladies and gentlemen of the jury Martis Edwards took the life of the woman who gave him life. . . .'

"MR. JORDAN: We object to that, if Your Honor please, not on trial for that.

"THE COURT: Overruled.

"MR. JORDAN: We except."

The evaluation of alleged prejudicial remarks by the District Attorney during argument must be determined on the merits of each case. *Racine v. State,* 290 Ala. 225, 275 So.2d 655.

In regulating such argument the trial judge of necessity, must be given wide discretion. Trials are adversary in nature and a vigorous prosecution and defense is to be expected. Neither side should be hampered too closely in making their particular presentation. *Bullard v. State,* 40 Ala.App. 641, 120 So.2d 580.

So long as counsel does not travel out of his case and confines statements to reasonable inferences deducible from the evidence, he should not be controlled. Notwithstanding the language used, if decorous and inoffensive, the argument would be proper. *Brown v. State,* 121 Ala. 9, 25 So. 744.

Judge Stone in *Cross v. State,* 68 Ala. 476, summed up the rule in this language:

" . . . The statement must be made as of fact; the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury;"

The court went on to say:

"It is the duty and right of counsel to indulge in all fair argument in favor of the right of his client; but he is outside of his duty and his right when he appeals to prejudice irrelevant to the case." *Cross,* supra.

In the present case the evidence disclosed a double homicide on the same night and at a time when the appellant was present. Mrs. Higginbotham's body was found kneeling at the feet of Mr. Higginbotham with her head in the dead man's lap. Each had been shot with the same rifle, and appellant by his own admission, said he shot his mother.

Whether we accept appellant's testimony at trial or his confession, at best, only a few minutes elapsed between the two homicides. As we see this evidence in this case, Mrs. Higginbotham's death was so closely connected as to constitute a part of res gestae. *Dillard v. State,* 27 Ala.App. 50, 165 So. 783. Thus it was a proper subject of comment.

We do not agree that the cumulative effect of the remarks produced the undue bias necessary for reversal. The statements complained of were reasonably deducible from the evidence in the case and within the scope of legitimate argument.

### III

█ It is also insisted that the court committed error in not excluding the following portion of the prosecutor's argument:

"MR. REYNOLDS: . . . . ' . . . You better believe that every citizen in this community has an interest in this case, every one of us has an interest in it. I know you have watched T.V., saw lawyers rant and rave . . . '

"MR. JORDAN: We object, Your Honor.

"THE COURT: Overruled.

"MR. JORDAN: We except."

This comment was neither an appeal to prejudice, nor a statement of fact bearing on guilt, but an expression of opinion seeking to impress the jury with the case's importance. *Bridges v. State,* 26 Ala.App. 1, 152 So. 51; *Russo v. State,* 236 Ala. 155, 181 So. 502. In view of the foregoing the comment was proper.

No error appears in the record.

Affirmed.

All the Judges concur.

CATES, Presiding Judge (concurring).

*Warren v. State,* 44 Ala.App. 221, 205 So.2d 916, stands for the propositions (1) that a confession is presumed to be involuntary and (2) that independent disinterested State psychiatrists' testimony of alcoholism exhibiting delirium tremens shifts the burden further to involuntariness.

In the instant case, Edwards' testimony if believed, showed him on a spree but did not show chronic and persistent drunkenness. Moreover, without the confession the State by ballistic opinion evidence made out a case of his guilt.

As to appellant's admitted presence at the killing, see Ala. Digest Homicide Key No. 151(1) as to excuse, justification and mitigation.