TYSON, Presiding Judge.
The appellant, Oliver Lamar Young, was indicted for the robbery of the Little General Food Store, 2804 Spring Hill Avenue, Mobile, Alabama. The jury found appellant guilty as charged and fixed his punishment at sixty years in the penitentiary. The trial court then entered judgment in accordance with this verdict.
Deborah Ann Trimnal testified that, on December 17, 1975, she was employed by the Little General Food Store, located at 2804 Spring Hill Avenue, Mobile, Alabama. Trimnal stated that around 7:00 p. m. that evening a brown colored automobile with two black male passengers pulled up to the front of the store. Trimnal testified that the front of the store is glass and therefore the whole parking lot is visible from the inside of the store. According to Trimnal, the two black males sat in the car for several minutes, observing the store, then drove off. Trimnal identified the appellant as the passenger in the brown automobile that evening. Trimnal testified that approximately thirty to forty-five minutes later, the appellant came in the store and asked for a pack of Kool cigarettes and some “Contacs (cold capsules).” As Trim-nal was getting the cigarettes, she stated, the appellant pulled out a long-barreled pistol and said that this is a robbery. According to Trimnal, the appellant instructed her to put all the money in the cash register in a paper bag. The cash register, Trimnal stated, contains a ten dollar bill, which is separate from the other currency in the register. Once this ten dollar bill is removed, Trimnal testified, a silent alarm goes off at the Mobile Police Headquarters, signifying that a robbery is taking place at the food store. Trimnal stated that she removed this bill from the register along with seventy-two dollars in various denominations. As she was placing the money in a paper bag, Trimnal testified, a customer came in the store. The appellant told Trim-nal to act like she was getting him something from behind the counter. When the customer went to the back of the store, Trimnal stated, the appellant took the sack, told her not to move because he had her covered with a shotgun, and left through the front door.
Trimnal testified that, as the appellant was walking out the front door, Sergeant Gill of the Mobile Police Department was entering the store. Trimnal stated that Gill asked her if she knew that her silent alarm had gone off in the store. Trimnal testified that she told Gill she had just been robbed by the man leaving the store. Trimnal stated that Gill immediately gave chase.
Later that night, Trimnal picked the appellant out of a lineup as the man who had robbed the store earlier that day.
Sergeant James Gill of the Mobile Police Department testified that on December 17, 1975, around 8:00 p. m., he responded to a radio dispatch in his car concerning a rob *736 bery at the Little General Food Store, 2804 Spring Hill Avenue, Mobile, Alabama. Gill stated that he was informed in the dispatch that a silent alarm had been set off and therefore not to use his siren. Gill testified that he was working that evening in plain clothes and was driving an unmarked car located only a block from the store. According to Gill, it only took him a few seconds to arrive at the scene. Gill testified that he drove up to the front of the store and sat in his car for a while observing the people inside the store through the plate glass. Gill stated he observed a lady near the back of the store, a black male at the counter, and a young lady behind the counter. According to Gill, everything appeared to be in order. Gill testified that, as he walked into the store, the appellant passed him coming out. Gill stated that he identified himself to the young lady as a police officer and asked her if she knew that her alarm had been set off. The young lady, according to Gill, told him- that the man who had just left had robbed her. Gill testified that he turned around and noticed the appellant through the plate glass window walking in front of the store, looking back inside. Gill stated that he pulled his revolver and gave chase. Gill testified that he fired one shot in the air and ordered appellant to stop. The appellant, according to Gill, jumped a low fence and started running. Gill testified that he knelt down on one knee to take aim when he caught a movement out of the corner of his eye. The next thing he remembers is a shotgun blast, which struck him in the mid-section and hurled him several feet back onto the pavement. Gill stated he looked up and saw a brown automobile moving away from where the shotgun was fired. Gill testified that a police car drove up, and he yelled at them to get the man in the brown car who had shot him. Gill picked the appellant out of a group of photographs as the man who robbed the store.
Officer Thomas Calhoun testified that he was a sergeant with the Mobile Police Department on December 17, 1975. Calhoun stated that he also responded to the robbery radio dispatch on his car radio that evening. Calhoun testified that he was driving an unmarked car without a siren. When he arrived at the Little General Food Store, Calhoun stated, Officer Lee had just pulled into the parking area. Both Calhoun and Lee noticed a brown automobile with the headlights off, driving very slowly behind an adjoining service station. Calhoun stated that both he and Lee gave chase, but the brown automobile accelerated and left. Since Officer Lee was in a marked automobile with a siren, according to Calhoun, he (Calhoun) came back to help render first aid to Gill while Lee pursued the brown automobile.
T. E. Lee testified that he was employed with the Mobile Police Department on December 17, 1975. Lee stated that he also responded to the robbery dispatch that evening. When he arrived at the scene, Lee testified, Gill was lying on the parking lot pavement. Gill, according to Lee, said that a man in a brown automobile had just shot him. Lee testified that he got in his car and noticed a brown automobile behind a service station moving slowly with its headlights off. Lee stated that a chase ensued and reached speeds up to seventy miles per hour. After approximately a four to five block chase, Lee testified, the brown car slid into a residential front yard, and Lee was able to block the car from moving any further. Lee stated that he found a twelve-gauge shotgun and a holster suited for a long-barreled pistol on the floorboard. Lee testified that the driver was John Lewis Young, the appellant’s brother.
Officer John F. Saxon of the Mobile Police Department testified that he arrived at the location of the chase shortly after Lee had apprehended John Lewis Young. Saxon stated that he found a box of shotgun shells on the ground outside the passenger side of Young’s car which he identified at trial.
Officer Carl Freeman of the Mobile Police Department testified that he broke down the shotgun and found an expended shell.
*737 Officer Hubert Bell of the Mobile Police Department testified that he went to the Mobile Work Release Center on Dauphin Street in Mobile, Alabama, later that same evening, and arrested the appellant, Oliver Lamar Young.
Sergeant Joseph Connick of the Mobile Police Department testified that he read the Miranda rights to appellant, and the appellant stated he understood them.
Mr. Tony Sewell testified that he was the Director of the Mobile Work Release Center on Dauphin Street. Sewell outlined the steps an inmate must go through to be placed in the Center and the qualifications which must be met. Sewell testified that the daily log which is kept by the Center’s personnel showed that the appellant was present at 7:15 p. m. and 8:55 p. m. on December 17, 1975. Sewell stated that he could not testify as to appellant’s whereabouts between 7:15 p. m. and 8:55 p. m.
Seven inmates appeared as witnesses and testified the appellant was present with them at one time or another during the evening hours of December 17, 1975, from 5:00 p. m. until 8:30 p. m., at the Work Release Center.
I
The appellant contends that the trial court committed reversible error in overruling appellant’s objections to certain remarks made by the district attorney during closing argument.
During this argument the following occurred (R. pp. 305-306):
“MR. GRADDICK: I wish you’d go back there and not give this man something minimum. The minimum is ten years, but you’ve heard testimony all day long about paroles and early releases and work release centers. Don’t go back there and give this man a minimum sentence because you know what kept him from getting the maximum right off the bat? Because he lived.
“MR. BROWN: Judge, I want to object at this time to the statement of the district attorney asking the jury not to give him a minimum sentence and commenting on the parole system of the State of Alabama.
“THE COURT: He hasn’t commented in that context on the parole system. Overruled.
“MR. BROWN: Your Honor, I state for the record that he has and I ask . . .
“THE COURT: Well, if I’m in error, I would be in error, but I assure you he did not.
“MR. BROWN: Your Honor, I ask that the portion of the argument be transcribed from the tape.
“THE COURT: It will be if you want it later. He did not say that in that context.”
Mr. Sewell of the Mobile Work Release Center had testified to the qualifications an inmate must meet in order to become eligible for work release status. In Sewell’s testimony there are several references to paroles. Such being the case, the district attorney’s statement was a reasonable inference deducible from the evidence. Edwards v. State, 56 Ala.App. 405, 321 So.2d 744, and cases therein cited. Thus, no error is shown.
II
Also, during closing argument, the following occurred (R. pp. 304-305):
“MR. GRADDICK: What else have you got? You’ve got the Defendant’s brother apprehended from the scene. Did he tell you he didn’t do it?
“MR. BROWN: Judge, we object and we’ve got a motion. We would like to approach the bench and state that motion for the record.
“THE COURT: Come on.
“(Whereupon, the following occurred out of the hearing of the jury:)
“MR. BROWN: Your Honor, we object to the statement of the district attorney to the jury, that in stating the evidence against our client, that they had a positive I.D. by two witnesses, that they had caught his brother, and at that point the district attorney turned and pointed at *738 the Defendant and said, quote, ‘Did he tell you that he didn’t do it?’ Your Hon- or, that is a direct reference and comment on the failure of the Defendant to testify in violation of his constitutional rights, and we ask this Court for a dismissal of all charges. Mr. Graddick is well aware that that action on his part is prejudicial to our client.
“THE COURT: That’s not what he said.
“MR. BROWN: What did he say?
“THE COURT: I’ll tell you after we get through here.
“MR. BROWN: He pointed at my client and stated, ‘Did he tell you he didn’t do it.’
“THE COURT: Do you want to put anything in the record?
“MR. GRADDICK: I said his brother, did he tell you he didn’t do it?
“MR. BROWN: Judge, I would like to .have the actual tape — I understand it’s being tape recorded. I would like to have the tape transcribed. I think this transcription, with what we’ve got, is that there was a long pause of approximately four to five seconds and he turned and faced the Defendant and pointed to the Defendant and said, ‘Did he tell you he didn’t do it.’
“THE COURT: I didn’t take it that way, but it’s in the record. Go ahead.
“MR. BROWN: Judge, could I have a ruling on my motion?
“THE COURT: Denied.
“MR. BROWN: Our motion for a mistrial.
“THE COURT: Denied.
“MR. BROWN: We except.”
The appellant contends that this was a direct reference to and comment on the failure of the appellant to testify at trial. At the hearing on the motion for a new trial, Mr. Graddick admitted making a gesture toward the appellant while making the above statement, but maintained that such gesture was made on the second “he ” quoted above. Also, as shown above, the trial judge did not interpret the statement as being a reference to the appellant’s not testifying at trial. The reference was to appellant’s brother and not the appellant.
The trial judge was in a better position to observe the proceedings and the demeanor of the attorneys, and he understood the district attorney’s gesture as referring to. appellant’s brother, about whom there had been testimony at trial. In this state of the record, we are not in a position to overrule the trial judge’s understanding of the situation which transpired.
In Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666, we find this statement:
“. . . Rather, the law assumes that defense counsel will act with due diligence so as to have such witnesses as necessary available at trial. Then, by way of compulsory process for obtaining such witnesses, the defendant is secured of a proper presentation of his case at trial. See Veith v. State, 48 Ala.App. 688, 267 So.2d 480, and eases cited. “Moreover, a searching cross-examination is also available to the defense. The record here reveals a thorough and sifting cross-examination of each eyewitness called to testify for the State, and thus we find no prejudicial effect on appellant’s rights.”
The appellant’s brother was at the courthouse and was therefore equally available at trial to either side to be called as a witness. The decision to call or not to call the brother was one for the respective parties to decide in the course of developing their evidence at trial. Under the circumstances presented, we cannot ascribe error to such decision to call or not to call the brother, and we therefore cannot attribute error to the above-quoted reference. See Keeby v. State, 52 Ala.App. 31, 288 So.2d 813, cert. denied, 292 Ala. 724, 288 So.2d 817; also, Gissendaner v. State, Ala.Cr.App., 338 So.2d 1025, cert. denied, Ala., 338 So.2d 1028.
Because of our decision in this cause, we find it unnecessary to make reference to a separate trial of the appellant, which took place on March 29, 1977, or any occurrence therein.
*739 This Court has carefully considered this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur.