No. 21416.

JOHN ROBERT BALLAY *v.* THE PEOPLE OF THE
STATE OF COLORADO.
(419 P.2d 446)

Decided August 2, 1966.     Rehearing denied September 19, 1966.

310

MELLMAN, MELLMAN and THORN, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES W. CREAMER, JR., Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, hereinafter referred to as the defendant, was convicted of the crime of second-degree murder following a trial during which the jury was instructed on the law as to first-degree murder. Motion for a new trial was filed and denied. The defendant was then sentenced to from twelve to twenty-five years in the state penitentiary.

The victim of the killing was one Juan Encinas who entered an employment agency in Denver about noon on December 10, 1962. A few seconds later the defendant entered the same place of business. Encinas proceeded toward the back of the room through a gateway which was three feet five inches high. The defendant followed him. An argument ensued and when Encinas turned to face the defendant, the defendant shot him twice. After the shots were fired Encinas wrestled the defendant to the floor. During the fracas, the gun fell

from the defendant's hand and he ran from the employment agency. An examination revealed that one of the shots grazed the neck of the deceased and the other penetrated his heart causing his death within an hour. The foregoing took place in the presence of witnesses, all of whom identified the defendant as the man with the gun.

There was some evidence that the defendant had suffered a knife cut during an altercation with Encinas about one and one-half years prior to the homicide, and that one of the purposes that defendant had in shooting him was partly to seek revenge for the former injury. The defendant was, to some extent, under the influence of liquor when he was arrested in a local tavern a short time after the shooting. He stated to the arresting officer, "I know what you want."

At the police station no questioning of the defendant was had. As one police officer stated, "Like I say, he was affected by the alcohol to the point where he was rambling and talking excitedly, and everybody that was there could hear what he said." Counsel for defendant readily admit that the defendant told his story to police without any attempt on their part to secure information. At page 2 of their brief we find the following statement:

"Following the shooting the defendant was placed in custody and taken to Police Headquarters where *without questioning* he told his story to the police officers." (Emphasis supplied.)

This story as related by Sergeant Montoya appears in the record as follows:

"He told me he had occasion to shoot a man — a man who had had occasion to cut his person with a knife about a year and a half prior; that this individual was known to him and that his purpose in shooting the man was partly revenge for the former injury suffered by him. He also informed me that the weapon which was used in this shooting was his own; that he had bought it

a few months prior to the incident from a truck driver in the area around Wiggins, Colorado.

"He stated that he didn't have the weapon on him when he saw Mr. Encinas, the deceased, but that he had gone up to his room in the New Central Hotel and secured the weapon and had brought it back down to the Hinky-Dink Bar located in the 1700 block on Market Street; that he was unable to locate the deceased there but was able to locate him a few doors away at the employment agency at 1709 Market Street. Then and there and at that location, he had occasion to shoot him. He also asked me if the man had expired. In other words, he said, 'Is he dead?' I said, 'Yes. I must inform you that it is my information that the man has died . . .' He says, 'I meant for him to die.' "

The defense offered on behalf of the defendant consisted largely of proof that Encinas had injured defendant in a knife fight some year and a half prior to the shooting; that Encinas' reputation as a law-abiding citizen in the community was bad and that defendant's reputation was good, notwithstanding that he had been arrested and convicted on several occasions for drunkenness, vagrancy, disturbing the peace, and tampering with an automobile.

The defendant took the stand and asserted that he could only remember a few of the events that occurred. He said he remembered wrestling with the deceased, and that he thought both he and Encinas were holding the gun when it was discharged. Captain Shumate of the police department testified that the reputation of the deceased as a peaceful and law-abiding citizen would be described as "bad" rather than "good." The police record of the deceased was present in court and although no formal offer of this record as an exhibit was made, it appears that the trial court would not allow it to be introduced. One Wetmore was called and evidence was offered by him to the effect that some time in 1961 the deceased had attacked him with a knife. Counsel stated

that the evidence was offered to establish the vicious character of the decedent. It was admitted that the defendant had no knowledge of the incident referred to. The court refused to admit the evidence.

As grounds for reversal it is argued that:

1. It was error to receive in evidence any statements allegedly made by the defendant to the police officers.

2. It was error to submit first degree murder for the consideration of the jury.

3. It was error in not permitting the witness for the defendant, Wetmore, to testify as to the previous threat and cutting by the decedent.

4. It was error not to permit the witness for the defendant, James Shumate, to testify as to the police record of the decedent.

■■ The trial court conducted a hearing outside the presence of the jury to determine whether the statements made by defendant following his arrest were made by him voluntarily. It was argued by defendant's counsel that the statements were not voluntary because the defendant was intoxicated. Witnesses who heard the statements made by the defendant testified that he knew what he was doing and what he was saying, although he was, to a degree, under the influence of alcohol. His remarks were a correct account of his activity in so far as being consistent with facts, as proven by other testimony. The trial court's finding that the confession was voluntary was supported by the evidence; its weight and sufficiency thus became matters for consideration by the jury under proper instructions. The fact that an accused person is, to some degree, under the influence of alcohol when he makes an incriminating statement, does not automatically serve to render the statement inadmissible. *Roper v. People,* 116 Colo. 493, 179 P.2d 232, 23 C.J.S. 229.

■■ It is also urged as ground for the claimed error that the defendant was not informed that he had a right to remain silent and that any statement made by him

could be used against him upon trial for the offense concerning which he was held in custody. *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977, is relied on in support of this argument. There is a great difference between the facts in *Escobedo* and those present in the instant case. The doctrine there applied is not applicable to the facts of this case. As yet, to our knowledge, no court has held that a police officer must take affirmative steps, by gag or otherwise, to prevent a talkative person in custody from making an incriminating statement within his hearing. This court will not be the first to announce such a rule. Nothing in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694, or *Escobedo, supra,* states or even suggests such a doctrine. The weight to be given the statements of the defendant, and the degree to which he might have been under the influence of intoxicating liquor, were matters properly submitted to the jury under instructions correctly stating the law. No error was committed by the trial court in this connection.

■ With reference to the claim that error was committed in submitting to the jury the question of first-degree murder, it is sufficient to say that there was ample competent evidence to support such a verdict if the jury had seen fit to accept it. There is no merit to that argument.

■ The evidence offered through the witness Wetmore, to the effect that he had previously been attacked by the decedent was properly excluded. The theory on which it was offered was that it tended to prove the vicious character of the deceased. Even upon such theory there must be some competent evidence to support a claim of self-defense before such evidence would be admissible, and the defendant must have known of the incident at the time of the homicide. The defendant had no knowledge of the claimed assault upon Wetmore, and there is no competent evidence remotely tending to justify the shooting in necessary self-defense. Under the

undisputed record the defendant was the aggressor at all times.

The trial court committed no error in connection with the proceedings relating to admission of the police record of the deceased. Even if the record had been offered as an exhibit the offer should have been rejected.

The judgment is affirmed.

MR. CHIEF JUSTICE SUTTON not participating.