No. 21870.

FRED MAES *v.* THE PEOPLE OF THE STATE OF COLORADO.

(418 P.2d 891).

Decided September 26, 1966.     Rehearing denied October 31, 1966.

Albert Cohen, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, John P. Moore, Assistant, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

Plaintiff in error, hereinafter referred to as the defendant, was accused of the crime of larceny from the person. It was alleged in the information that on September 25, 1964, the defendant,

"* * * did unlawfully and feloniously steal, take and carry away from the person of NORTON E. KESSLER and without his consent, One (1) brown leather billfold with miscellaneous cards and papers, of the personal property of NORTON E. KESSLER; * * *."

Following trial the jury returned a verdict of guilty, upon which judgment was entered sentencing the defendant to a term of not less than one nor more than ten years in the state penitentiary.

As grounds for reversal of the judgment it is argued: "* * * that error was committed in the lower court because said court admitted into evidence incriminatory statements of a confessional or admission type made by the defendant notwithstanding the fact that the defendant was not advised or warned of his Constitutional rights (1) to consult with counsel and (2) to remain silent."

The facts upon which this contention is made are not in dispute.

Officer Russell C. Stewart testified that he was a Denver police officer, but that at the time in question he was employed by the King of Clubs. He personally saw defendant take the billfold from Kessler's pocket. After describing his observations of the transaction he then stated that he placed defendant "under arrest," and called for a police car. Stewart was then asked the following questions to which he replied as follows:

"Q. Now, did you interrogate the defendant in the car at all?

"A. Yes, sir, I talked to him, I told him the wallet didn't have any money in it.

"Q. Did he make any statements concerning that?

"A. Yes, sir. He said it looked like —

"MR. COHEN: Your Honor, I'll object. Any statements that the defendant made cannot be related here in this courtroom now. If your Honor will hear me out on the law, I'd be happy to reveal it.

* * *

"THE COURT: Objection overruled. * * *

"Q. (By Mr. May) Will you state what the defend. said.

"A. He said it looked like he picked a loser."

In addition to the testimony set forth above, Officer Jack Southard testified as follows:

"Q. Did the defendant make any statements in your presence at the scene?

"(Objection made and overruled.)

"Q. The defendant was present, is that correct?

"A. He was.

"Q. And who else was present?

"A. Officer Stewart and also the — Mr. Norton Kessler, whom I made the offense report on.

"Q. Were there any threats or promises made to the defendant?

"A. No, sir.

"Q. Were his statements voluntary?

"A. Yes, sir.

"Q. Therefore, will you relate to the Court what those statements were?

" (Objection made whereupon argument was made for both sides in chambers, after which the objection was overruled. The argument is preserved.)

"Q. Were these statements made in answer to any question propounded by you?

"A. No, sir.

"Q. Were the statements made in answer to any question propounded by anybody to the defendant?

"A. No, sir.

"Q. Will you relate what the statements were, please?

"A. Do you want my discussion with the other officer?

"Q. Well, you say it the way you have to say it.

"A. Well, I was speaking to my partner in the police car at the time, and I stated to him that the billfold didn't even have any money in it. And Mr. Maes stood up, or spoke up in the back seat, and he said, 'I sure picked on a live one this time, didn't I.' "

It is the position of the Attorney General that the opinion of the Supreme Court of the United States in *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977, is inapplicable to the instant case, for the reason that no interrogation is found in the case at bar which is comparable to that present in *Escobedo*. The Attorney General asserts:

"* * * By no stretch of the imagination do the facts

of the instant case show that the police were engaged in a process of interrogation proscribed in *Escobedo.*"

■ We are thoroughly familiar with the opinion in the case of *Escobedo v. Illinois, supra,* which is strenuously relied on by counsel for the defendant. In what seems to be an endless procession, persons convicted of crime are giving twisted interpretations of that opinion as a basis for proceedings in this court. Wherever the rule of the *Escobedo* case is applicable we will be governed by it. A comparison of the facts upon which *Escobedo* is based and those present in the case at bar will show no similarity whatever. *Escobedo* holds that where an investigation is no longer a general inquiry into an unsolved crime, but is focused on a particular suspect who is in custody, and where the police carry out a "process of interrogation that lends itself to eliciting incriminating statements" the accused has been denied a constitutional right to counsel unless specific precautions are taken.

■■ The concept of police interrogation which falls within the ambit of the *Escobedo* opinion is a process of interrogation that *lends itself to eliciting incriminating statements.* The record before this court contains no such process. The pertinent statements of the accused were not made in response to any question directed to him. They were wholly unsolicited. There is no duty on a police officer to seal the lips of persons in custody by resort to adhesive tape or gag to prevent them from making any statement which might be incriminating. *Ballay v. People,* 160 Colo. 309, 419 P.2d 446.

We direct attention to the opinion of Mr. Chief Justice Traynor in *People v. Treloar,* 64 A. C. 145, 49 Cal. Rptr. 100, 410 P.2d 620. In that case, as in the case at bar, the defendant was placed under arrest and on the way to the police station he volunteered incriminating statements without any "process of interrogations" on the part of the officers. The California Supreme Court

held that these comments of the accused were admissible. We quote from that opinion the following:

"These three statements are admissible. When they were made, three of the four conditions of *Escobedo* and *Dorado* necessary to attain the vital accusatory state had been met, but the condition that the statements be the result of a 'process of interrogations that lends itself to eliciting incriminating statements' * * * had not been met. The test whether a prohibited process of interrogations has been undertaken is objective. 'Whatever may be the subjective intent of the interrogators, we must * * * analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances.' (People v. Stewart supra, at p. 579, 43 Cal. Rptr. at p. 206, 400 P.2d at p. 102). As we explained in In re Lopez, 62 Cal. 2d 368, 42 Cal. Rptr. 188, 398 P.2d 380, the United States Supreme Court in *Escobedo* 'sought to eliminate conditions which invited coerced confessions'; it 'sought primarily to prevent police tactics which, in the past, have spawned involuntary confessions.' (62 Cal.2d at pp. 372-373, 42 Cal. Rptr. at p. 191, 398 P.2d at p. 383.) In People v. Cotter, 63 A.C. 404, 46 Cal. Rptr. 622, 405 P.2d 862, we pointed out that an analysis of *Escobedo, Dorado,* and *Stewart, supra,* makes it clear that those cases were primarily aimed at preventing police officers from employing 'inquisitorial techniques in seeking to prove the charge against the accused out of his own mouth.' (63 A.C. at p. 412, 46 Cal. Rptr. at p. 626, 405 P.2d at p. 866.) The facts of the cases decided by this court that compelled reversal under *Escobedo* demonstrated that the police had attempted a process of sustained and accusatory inquiries, resulting in active, if sometimes subtle, pressure upon the accused to incriminate himself."

■■ The court did not err in permitting the de-

534

fendant's statements to go to the jury. There is no merit to the contention of counsel that the trial court erred in refusing to give instruction on intoxication of the defendant as bearing upon his ability to form specific intent.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ not participating.