260 So.2d 408

**Mack BEDINGFIELD, Jr.**

v.

**STATE.**

**8 Div. 137.**

Court of Criminal Appeals of Alabama.

April 4, 1972.

Malone, Steele & Alexander, Athens, for appellant.

William J. Baxley, Atty. Gen. and John A. Yung, IV, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment charges manslaughter in the first degree. Verdict and judgment fixed punishment at imprisonment for five years. We affirm.

The evidence disclosed that on the evening of May 10, 1969, the appellant was driving down Alabama Highway 20 in Limestone County, Alabama, at a high rate of speed. The appellant stated that he was doing 60 to 65 miles per hour just before the incident took place, which was about 9:30 in the evening. During the same day prior to the incident the appellant described having consumed two to three cans of a six-pack of beer during the morning with a friend, having a hamburger, and then going to a beer tavern and drinking a pitcher or two of beer, watching a ball game during the afternoon, coming back home, putting on a different shirt, and then going by the home of his girl friend, whom he subsequently married. The appellant denied having anything to drink there, but left alone driving his automobile through Decatur, Alabama, across the river bridge, and turned right at the intersection of Alabama 20 and U.S. 31. The appellant struck the rear of a pickup truck being driven by the deceased, one Rubbel C. Goggins.

One witness for the State, whose car the appellant had passed shortly before the incident, estimated the appellant's speed at 70 miles per hour. State Trooper James Taylor, in making his investigation, stated

that there were 178 feet of skid marks to the point where the appellant's vehicle left the road, and an additional 100 feet thereafter from the edge of the road to a point where the appellant's vehicle came to a stop.

Mr. Goggins was transported to Decatur General Hospital by ambulance and was pronounced dead on arrival there. He had been alone in a pickup truck, and his body was thrown some distance.

Deputy Sheriff Noland Davis, accompanied by Auxiliary Deputy Gerald Bates, were the first officers to arrive at the scene. Both of them testified they smelled alcohol on the breath of the appellant; that he was thick tongued and staggering, and in their opinion was under the influence of alcohol. Officer Davis asked him to have a seat in his car while he and Mr. Bates attempted to direct traffic. Neither officer attempted to interrogate the appellant, nor did either of them advise him of his *Miranda* rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. Upon arrival at the scene, and without attempting to interrogate the appellant, the appellant volunteered the words, "Well, I hit a damn man but I couldn't help it." Subsequently, while the appellant was seated in the sheriff's vehicle, State Troopers Taylor and Sorrows came to the scene to investigate and observed the appellant having a conversation with his mother and a Mr. Red Ennis, who had driven her to the scene. Lt. R. P. Sorrows overheard the appellant state to his mother and Mr. Red Ennis, "You owe me one man. I just run over him, I done it and I will take the blame." None of the officers had attempted to interrogate the appellant at this point, but simply overheard this conversation while they were making their own at-the-scene investigation. Lt. Sorrows subsequently, as he was getting into the Trooper's automobile heard the appellant state in a babbling fashion, "As many chances as I have had to kill a sonofabitch with a gun, I had to run over one with a car." This statement was admitted by the trial court after determining

its voluntariness outside the presence of the jury. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. Having determined initially that such was purely voluntary the trial judge admitted this statement in evidence. Officer Sorrows stated that at this point he was investigating a wreck on suspicion of drunken driving, and that neither he nor any of the other officers had made any effort to advise the appellant of his *Miranda* rights, nor had they attempted to interrogate him.

Subsequently, Trooper James B. Curtis took the appellant to Athens-Limestone Hospital where he signed a consent for a blood test and where same was made before taking the appellant to Limestone County jail. After delivering the appellant to jail, in the presence of Sheriff's Deputy Davis and Auxiliary Deputy W. Bates, while several other persons were being brought to the office to be charged in other offenses, and while there, the two overheard the appellant state to one of the other prisoners in the office, "I killed a damn man." Prior to the admission of this statement the trial judge also determined this to be voluntary, outside the presence of the jury under Jackson v. Denno, supra. The officers stated that they had not made any effort to advise the appellant of his legal rights under *Miranda,* nor had they attempted to interrogate him.

The State Toxicologist, upon analyzing the alcohol content in the appellant's blood, stated it contained "0.24 percent ethyl alcohol" and that in his opinion a person with this alcohol content in the blood could not safely operate a motor vehicle.

Appellant's able counsel argues that none of the statements made in the hearing of the officers at the scene of the accident were voluntarily made and further should not be admitted because the appellant had not received *Miranda* warnings.

I

In Anderson v. State, 45 Ala App. 653, 235 So.2d 902, cert. den. 285 Ala. 756,

235 So.2d 906, we find the general rule governing the admissibility of such statements on their "voluntariness." From *Anderson*:

"The rule is well established in this jurisdiction that intoxication short of mania or such an impairment of the will and mind as to make the person confessing unconscious of the meaning of his words will not render a confession inadmissible. Warren v. State, 44 Ala.App. 221, 205 So.2d 916, cert. denied 281 Ala. 725, 205 So.2d 920; Ray v. State, 39 Ala. App. 257, 97 So.2d 594; Smith v. State, 25 Ala.App. 297, 145 So. 504; Eskridge v. State, 25 Ala. 30."

In Eskridge v. State, 25 Ala. 30, we find:

". . . It does not follow necessarily, that because the party was much intoxicated his reason was so far dethroned as to disable him from comprehending the effect of his admissions, or from giving a true account of the occurrence to which they had reference. . . ."

Under the foregoing, we hold that the trial judge did not abuse his discretion in determining these statements to be voluntary and submitting them for consideration to the jury. Ballay v. People, 160 Colo. 309, 419 P.2d 446; 23 C.J.S. Criminal Law § 828, page 229.

## II

Appellant next contends that because no *Miranda* warning was given to him at the scene of the accident his statements or declarations there were inadmissible because he was in custody. The issue thus presented this court is whether or not such warning is necessary before a "spontaneous declaration" under these circumstances may be received in evidence.

The Alabama Supreme Court in Truex v. State, 282 Ala. 191, 210 So.2d 424, defined "custodial interrogation" as follows:

"'* * * we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"

It is clear that none of the officers had attempted at any point at the scene of the accident to interrogate the appellant. To the contrary, he walked up to them and babbled certain exclamations and subsequently talked with his mother and Mr. Davis in the hearing of the officers, but without any questioning whatever by the officers. The rule governing this situation is discussed in In Re Orr, 38 Ill.2d 417, 231 N.E.2d 424, as follows:

". . . It is therefore apparent that the issue here is not the necessity of a warning prior to questioning, but its necessity before a spontaneous declaration may be received in evidence. Although we have not heretofore considered this question, our research discloses several cases in which other courts have done so. All agree that *Miranda* does not require police to interrupt a suspect in the process of making a spontaneous statement in order to warn him of his constitutional rights, and that a statement made in the absence of any questioning is not inadmissible by virtue of the failure to give such warning. (Ballay v. People, 160 Colo. 309, 419 P.2d 446, 449; United States v. Cruz, (W.D.Tex.) 265 F.Supp. 15, 20; Diaz v. United States, (E.D.La.) 264 F.Supp. 937, 945; People v. Jones, 244 Cal.App.2d 378, 52 Cal.Rptr. 924, 926; see also State v. Hymore, 9 Ohio St.2d 122, 224 N.E.2d 126, 129.) In our opinion, these decisions are correct. In *Miranda,* the majority makes clear that its requirement is directed solely toward warnings prior to in-custody interrogation, for, during the course of the opinion, it said (384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726): 'In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any

compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated . . . ."

We hold that these statements of the appellant made at the scene of the incident were properly admitted. Balley v. People, 160 Colo. 309, 419 P.2d 446. See also Guenther v. State, 282 Ala. 620, 213 So.2d 679.

### III

 Appellant next challenges the statement made at the Limestone County jail on the same grounds. Here also the trial judge carefully heard the evidence on voluntariness outside the presence of the jury and then submitted this statement to them for consideration. We believe these rulings correct if where, as here, while the appellant may have been in custody, for purposes of *Miranda* there was no in-custodial interrogation at all. *Miranda* does not reach such volunteered statements made to others where there has been no in-custodial interrogation. People v. Routt, 100 Ill.App.2d 388, 241 N.E.2d 206.

### IV

In overruling appellant's objection to the admissibility of the statement made at the Limestone County jail, the trial court gave the following explanation:

"THE COURT: Regarding this as a purely independent statement, voluntary, and the nature of the evidence shows that it was not induced by any officers, that no officer took part and no one with authority took part and it was a private conversation, I will overrule it.

"MR. STEELE: We except. We move for a mistrial in that the Court in the presence of the jury made a statement as to what the Court regarded the evidence to prove as to the place, time, and circumstances under which the statement was made.

"THE COURT: Overrule the motion. Ask the question. Go ahead, now.

"MR. STEELE: We except."

We do not believe this to be a comment upon the evidence by the trial judge, but rather an explanation of his ruling and its legal effect. See 23 C.J.S. Criminal Law § 993.

We have carefully considered this entire record as we are required to do and find same to be free from error. The judgment of conviction is therefore due to be and the same is hereby affirmed.

Affirmed.

PRICE, P. J., and ALMON and CATES, JJ., concur.