The appellant in this cause has been before this court previously on the same cause of action. We reversed and remanded the cause to the lower court and a new trial was held. The applicable facts of this proceeding are detailed in our previous opinion at 409 So.2d 984.
Appellant was tried again on May 4 and 5, 1983 before Circuit Judge J. Richmond Pearson. The jury returned a verdict finding the appellant guilty of manslaughter in the first degree and the trial judge sentenced appellant to ten years in the state penitentiary. This appeal followed.
Appellant asserts that the trial court erred in allowing Officer Jimmy Acton to testify as to statements made in response to Officer Acton's questions prior to appellant being informed of his constitutional rights.
A review of the facts reveals that, upon his arrival at the scene of the crime, Officer Acton spoke with Mrs. Pat Cooper and she informed him that several shots had been fired in a nearby field. After noticing the appellant's presence in the field, Officer Acton approached appellant and inquired as to his knowledge of the shooting incident. Officer Acton testified that the appellant stated that he had fired two shots in the air and that he had chased some people down the field toward what is known as the Big Wheel. Officer Acton also testified that, upon appellant's exit from the field, Lillie Williams exclaimed, "You're the one that shot Bobby," at which time the appellant responded, "I ain't shot nobody. If I had I wouldn't miss."
Appellant maintains that the trial court erred in not sustaining his objections to admission of these statements and now argues that they were made while he was "in custody". We disagree.
Miranda warnings are required only when there has been a restriction of one's personal freedom as to render that person in custody. Oregon v. Mathiason, 429 U.S. 492, 97 S.Ct. 711,50 L.Ed.2d 714 (1977). The record in the case at bar does not reflect that the appellant was under any form of custody when he made incriminating statements to both Officer Acton and Lillie Williams. Miranda warnings are inapplicable to such traditional investigatory functions as general on-the-scene questioning. Cork v. State, 433 So.2d 959 (Ala.Crim.App. 1983);Hall v. State, 399 So.2d 348 (Ala.Crim.App. 1981); UnitedStates v. Montos, 421 F.2d 215 (5th Cir. 1970), cert. denied,397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532.
In determining the existence of custodial interrogation, the standard that is applicable is "whether a reasonable man would feel that he was physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action is restricted by such interrogation." Hall, supra; and see cases cited therein.
Montos, supra, developed the criteria that courts should utilize in determining whether Miranda warnings were necessary. The criteria included: (1) probable cause to arrest, (2) subjective intent of the police, (3) subjective belief of the accused, and (4) focus of the investigation. "While the focus of the investigation is especially important in deciding whether an accused should be given the Miranda warning, it is custody and not focus which marks the point at which it becomes mandatory" (emphasis deleted). Hall, supra; Mathiason, supra;Harris v. State, 376 So.2d 773 (Ala.Crim.App.), cert. denied,376 So.2d 778 (Ala. 1979).
The record in the instant case does not support appellant's contention of "custodial interrogation" at the time he made the statements. Therefore, Miranda warnings were not required and the trial *Page 323 
court acted properly in admitting the statements into evidence.
Similarly, the appellant argues prejudicial error was committed by the trial court in allowing Lillie Williams the opportunity to testify as to statements made by appellant prior to his being given Miranda warnings.
As stated earlier, upon seeing the appellant leaving the field, Lillie Williams stated, "You're the one that shot Bobby." Ms. Williams testified at trial that the appellant initially denied the allegation but went further and stated that if he had been trying to shoot someone he would not have missed. Ms. Williams was also allowed to testify that the appellant made statements to the effect that he was tired of people hunting on his land and that he had shot at someone in a blue denim jacket.
Appellant argues that he was in custody at the time he made the statements to Lillie Williams, since Officer Acton had escorted him to where Ms. Williams was standing and stated that "this is the boy that was doing the shooting." Again, we disagree with appellant's contention.
Appellant refers to Hall v. State, supra, in his argument. The point that appellant relies on in Hall is that the distinction between general and custodial interrogation must be determined by a case-by-case factual analysis. The facts in the case at bar do not meet the "custodial standard" at the point in time the appellant made statements to Ms. Williams. Harrisv. State, supra, quoted Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in defining "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." The officer's actions and words at the most amounted to "a focusing of the investigation" on the appellant. Therefore, "Miranda warnings are not required simply because the questioned person is one whom the police suspect or one on whom the investigation has focused." Harris, supra, Oregon v.Mathiason, supra; Beckwith v. United States, 425 U.S. 341,96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); Malone v. State, 361 So.2d 674
(Ala.Crim.App.), cert. denied, 361 So.2d 691 (Ala. 1978).
Moreover, the questions propounded to the appellant were asked by a citizen, not a law enforcement officer. According toTerry v. State, 397 So.2d 217 (Ala.Crim.App. 1981) Miranda
warnings are not required in instances where inculpatory or otherwise admissible statements are made to persons who are not law enforcement officers or their agents. Hinshaw v. State,398 So.2d 762 (Ala.Crim.App. 1981); Truex v. State, 282 Ala. 191,210 So.2d 424 (1968); Ellis v. State, 338 So.2d 428, (Ala.Crim.App. 1976); Bedingfield v. State, 47 Ala. App. 677,260 So.2d 408 (1972). Thus, the trial court acted properly in admitting into evidence the appellant's contested statements.
Appellant also contends that the admission into evidence of photographs of the deceased body had no probative value, since he, the appellant, had stipulated to the cause of death. He therefore maintains that the trial court committed prejudicial error in allowing their admission.
The law in Alabama on this issue is clear. Photographs which depict the character and location of external wounds on the body of a deceased are admissible even though they are cumulative and based upon undisputed matters. Wicker v. State,433 So.2d 1190 (Ala.Crim.App. 1983); Hines v. State,365 So.2d 320 (Ala.Crim.App.), cert. denied, 365 So.2d 322 (Ala. 1978);Ellenburg v. State, 353 So.2d 810 (Ala.Crim.App. 1977); Davisv. State, 338 So.2d 507 (Ala.Crim.App. 1976). The fact that a photo is gruesome and ghastly, if it has some relevancy to the proceeding, is no reason to exclude its admission into evidence, even if the photographs may tend to inflame the jury.Richards v. State, 337 So.2d 171 (Ala.Crim.App.), cert. denied,337 So.2d 173 (Ala. 1976). Therefore, the appellant's argument is without any substantial merit.
Lastly, the appellant complains that the trial court committed prejudicial error in *Page 324 
denying his motion for a new trial based upon juror Virginia Williams's failure to answer questions submitted to the venire during voir dire examination. It is undisputed that, during the voir dire examination, the venire was asked whether anyone knew anything about the facts of the case about to be tried. Several venirepersons responded that they had heard the facts of the case through various sources. However, Venireperson Virginia Williams did not respond even though the substance of the question was asked a total of four times in some form. Later, at a hearing on appellant's motion for a new trial in front of the trial judge, when Juror Williams was asked why she failed to respond, she replied, "I think you would have had all of us stand up and say the same thing." As appellant stated in his brief to this court, "This is not a case of a juror not hearing the question or the question being ambiguous." It is apparent that the juror affirmatively elected not to answer.
The transcript of the motion for new trial hearing also shows that Juror Williams was employed at G and H Ready Mix in Jackson, Alabama, at the time of the trial. Her immediate supervisor, at G and H Ready Mix was the brother-in-law of the deceased. She testified at the hearing that she knew her supervisor James Baby Ray Foster was a brother to Willie and Munk Foster, who had run advertisements in local papers regarding the unfairness of appellant's previous trial and the injustice that had been accorded by such a light sentence. Juror Williams admitted that she had discussed the facts of the case with James Baby Ray Foster at length on several occasions prior to the second trial and that James Baby Ray Foster had stated that he thought that the first trial was unfair and that justice had not prevailed. She also testified that she put a lot of faith into what Mr. Foster told her.
Initially, one would think that the question that we must answer in deciding this issue is whether the appellant was prejudiced by Juror Williams's failure to respond. However, Exparte Ledbetter, 404 So.2d 731 (Ala. 1981) dealt with this type of problem and held that the test is not whether the appellant was actually prejudiced, but whether he might have been prejudiced. Beauregard v. State, 372 So.2d 37 (Ala.Crim.App. 1979).
Ex parte Ledbetter, supra, utilized Leach v. State,31 Ala. App. 390, 18 So.2d 285 (1944) in its decision. In Leach, supra, the venire was questioned as to whether any member of the panel was qualified to serve as a law enforcement officer. Two venirepersons responded in the affirmative and were stricken, but another remained silent and was subsequently selected for jury service. The appellate court held that the concealment constituted error, whether or not it was deliberate or unintentional.
The facts in Ex parte Ledbetter are similar to those in the case at bar. The Ledbetter venire was asked if any member of the panel or their family had ever been the victim of a crime of violence of any sort. This question was asked three times in some form by the defense counsel. A particular venireperson elected not to respond and was subsequently chosen for jury service. However, at Petitioner Ledbetter's hearing on a Motion for New Trial, the particular juror testified that approximately five months prior to petitioner's trial, his house and automobiles had been sprayed with shotgun pellets. The incident was reported to the local authorities, who investigated and filed a report. The Court held that the juror's failure to disclose the incident resulted in probable injury to the petitioner.
It is axiomatic that jurors must maintain an indifferent interest in the outcome of each and every verdict. They should view and hear the proceedings without bias or prejudice and consider the evidence presented by both the accused and the State with a sense of impartiality. Not only family relationships, but those formed within the everyday social interactions of life may impart a want of impartiality. By way of nature, social interaction creates relationships where one party feels some sort of commitment to the other party. *Page 325 
Favors and affections, whether personal or professional, spring out of most relationships. Brazleton v. State, 66 Ala. 96
(1880); Ex parte Ledbetter, supra. The purpose of voir dire examinations of a venire prior to a trial is to discover any interest a potential juror might have in the proceeding about to be tried.
Questions that ask venirepersons whether they know any of the individuals involved in the case, whether they know any of the facts of the case, and whether any of the venire has ever been the victim of a crime are all important considerations that determine the impartiality and fairness of a trial proceeding. When these questions and others are answered falsely, either by vocal assertions or by intentional or indifferent silence, which in many cases is perhaps the most detrimental, an accused is denied his right to challenge for cause and has in fact been deceived into forgoing his right of a peremptory strike.
In the case at bar, we feel confident that had Venireperson Williams made known her knowledge of the facts of the case about to be tried and her professional relationship with the brother-in-law of the deceased, she would have been either challenged for cause or "struck" by the appellant. While our position may appear to be tantamount to second guessing what the defense counsel's actions would have been had he known of Williams's knowledge of the case, we cannot abide by a practice allowing potential jurors to deprive defendants in criminal actions of the right to truthfully know jurors' biases and thus prevent defendants from properly utilizing their jury strikes and ultimately resulting in probable prejudice.
Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970), a leading case on voir dire examination, "did not address the effect of an improper answer or failure to answer questions on voir dire which had they been answered properly would have disclosed a challenge for cause." Burroughs Corporation v. HallAffiliates, Inc., 423 So.2d 1348 (Ala. 1982); Ex Parte O'Leary,438 So.2d 1372 (Ala. 1983). Freeman, supra, did, however, establish standards that a reviewing court should consider in scrutinizing a trial court's decision. Freeman, supra, stated:
 "We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to this movant."
We are of the opinion that in this case the lack of response by the prospective juror Williams resulted in probable prejudice to the appellant. Having studied the trial record and the transcript of the hearing on the motion for new trial we feel it is clear that there is more than a likelihood that the appellant was denied his right to an impartial jury. For this reason, we reverse the conviction and remand this case to the trial court for a new trial.
REVERSED AND REMANDED.
All the Judges concur.