Leroy Thomas was convicted for the murder of Julie Mae Sheppard and sentenced to life imprisonment. Six issues are raised on this appeal from that conviction.
 I
The State proved, through eyewitness testimony, that the defendant shot the victim in the neck with a .22-caliber rifle. This testimony was undisputed because the defendant presented no evidence.
The State failed to establish a proper chain of custody of the victim's body and the bullet lodged in her neck. There was absolutely no showing of how the victim's body was transported from the Clay County Hospital, where the coroner pronounced the victim dead, to Birmingham, where the autopsy was performed. "To establish a sufficient predicate for admission into evidence it must be shown that there was no break in the chain of custody of the projectile. Identification and continuity of possession must be sufficiently established to afford ample assurance of the authenticity of the item." Ex parte Yarber,375 So.2d 1231, 1234 (Ala. 1979) ("The opinion testimony concerning the projectile should not have been admitted. There was no foundation laid as to the projectile and therefore any testimony comparing it with other bullets properly in evidence should have been excluded."). The State "must prove to a reasonable probability that the item is the same as, and not substantially different from, the object as it existed at the beginning of the chain." Slaughter v. State, 411 So.2d 819, 822
(Ala.Cr.App. 1981), approved in Ex parte Williams,505 So.2d 1254, 1255 (Ala. 1987). Although the record itself does not supply a "reasonable probability" that the body was the same as, and not substantially different from, the condition in which it was discovered, the record does not suggest that the body, and in particular the bullet, had been tampered with or altered.
We view the State's erroneous failure to lay the proper predicate and establish a completed chain of custody of the victim's body as harmless error. The undisputed evidence shows that the defendant shot Mrs. Sheppard. In our opinion, after an examination of the entire cause, it does not appear that this error "has probably injuriously affected substantial rights of *Page 225 
the parties" under Rule 45, Alabama Rules of Appellate Procedure. "Where the defendant claims accident or self-defense the erroneous admission of the bullet allegedly taken from the body of the deceased is harmless error." Gwin v. State,425 So.2d 500, 508 (Ala.Cr.App. 1982), cert. quashed, Ex parteGwin, 425 So.2d 510 (Ala. 1983). Even though there was no defense presented in this case, we find the erroneous admission of the bullet and the expert testimony to the effect that the bullet could have been fired from the rifle harmless.
We recognize that "[o]verwhelming evidence of guilt does not render prejudicial error harmless under Rule 45, Ala.R.App.P."Ex parte Lowe, 514 So.2d 1049 (Ala. 1987). See also Ex parteJohnson, 507 So.2d 1351, 1356 (Ala. 1986). Compare Boyd v.State, 50 Ala. App. 394, 397, 279 So.2d 565 (1973) ("[A]n error that might have been prejudicial in a close case does not require reversal when the evidence of appellant's guilt is strong."). However, in this particular case, the expert's testimony, the bullet, and the inferences to be drawn from the evidence were merely cumulative to the ultimate fact which had been previously established by eyewitness testimony — that the defendant shot and killed the victim. "The rule is that testimony apparently illegal upon admission may be rendered prejudicially innocuous by subsequent legal testimony to the same effect or from which the same facts can be inferred."Yelton v. State, 294 Ala. 340, 342, 317 So.2d 331 (1974). "It is not error to allow the same facts to be again shown against objection when they have already been proven without objection." Bush v. State, 282 Ala. 134, 139, 209 So.2d 416
(1968).
 II
The defendant alleges that the admission into evidence of a .22-caliber spent cartridge found at the scene of the shooting by Lineville Police Officer Larry Bishop constituted error because Bishop could not identify it at trial as being in the same or substantially the same condition as when he discovered it.
Officer Bishop testified that he found the empty shell, put it in a "plastic bag," and took it to "the crime lab." The plastic bag was placed inside a "manila envelope." When asked to identify the shell, the officer stated, "I couldn't swear to it as being the same one, but it looks like that."
Louden Yates, a criminalist for the State Department of Forensic Sciences, testified that he received, among other items, "one spent cartridge" from Officer Bishop.
Under Ex parte Williams, 505 So.2d at 1255, the State proved a sufficient chain of custody. In Williams, the officer testified that the exhibits "appeared" to be or were "similar" to the items found during the search. "There is no break in the chain of custody, because the testimony contained in the record accounts for each successive step in the handling of the evidence from the time it was seized until the time of trial. . . . The inability of the officers to identify the evidence with more certainty in this case is, at worst, a weak link in the chain of custody." 505 So.2d at 1255. Additionally, the confusion at trial over whether the bullet was in a plastic or a paper bag when received by Yates represents a weak link rather than a missing link in the chain of custody.
 III
The trial judge properly sustained the prosecutor's objection and prevented defense counsel from proving, on cross-examination of State's witness Verna Welch, that someone had told her two weeks before the victim's death that the victim was going to be dead within two weeks. "It has generally been held that the motive of another to commit the crime for which the accused is being tried, without more, is not admissible." C. Gamble, McElroy's Alabama Evidence § 48.01(7) (3rd ed. 1977).
 "The general rule in this state is that, without additional evidence, one may not prove that another planned, designed or threatened to commit the crime for which the accused is tried. However, if there is other evidence pointing with strength to such others' guilt, then evidence of such *Page 226 
plan or threat is admissible." McElroy, § 48.01(6).
Furthermore, outside the presence of the jury, Ms. Welch clarified her testimony:
 "THE COURT: Did your friend tell you that they were going to take her life or did they hear someone else was going to?
 "THE WITNESS: No, sir. They didn't say it like that. They just said, 'I know you love Julie [the victim] and you tell Julie that if she don't quit doing the way she's doing, she will be dead in two weeks.' "
Earlier, this witness testified that she herself had told the victim that the victim "was living her life too fast, for her to slow down" and she stated that the victim was drinking too much. Ms. Welch's anticipated testimony would not have established that someone else had a motive to kill the victim.
 IV
Deputy Harris was properly allowed to identify, over the defense counsel's objection on the ground of hearsay, the people he talked with and the places he had gone as a result of those conversations immediately before he found the defendant in "the kudzu patch." He was not permitted to testify to the content of those conversations. The defendant alleges that the officer's conversations and acts constituted hearsay because the acts were intended to be statements. See McElroy, § 242.01(2).
The fact of the conversations in this case was offered to explain the officer's actions and presence at the scene — not for the truth of the matter asserted. Accordingly, it was not hearsay. Clark v. City of Montgomery, 497 So.2d 1140, 1142
(Ala.Cr.App. 1986). See also Dent v. State, 423 So.2d 327, 328
(Ala.Cr.App. 1982) (officer properly allowed to testify that he was made aware of robbery through radio dispatch in order to explain the reason he stopped and arrested the accused).
 V
We find no racial impropriety in the State's use of five of its peremptory challenges to strike five blacks from the jury.
Initially, the objection raising this issue was made only after the jury had been sworn and impaneled. This objection was untimely. Swain v. State, 504 So.2d 347, 349 (Ala.Cr.App. 1986).
Moreover, the trial judge found that the defendant had not established a prima facie case of discrimination. "[T]he Court does not find that there is prima facie evidence that the State systematically struck members of the Defendant's race from the jury, and does note questions during voir dire and has considered the voir dire by both parties in consideration of the Court's ruling in this matter along with the fact that counsel for the Defendant also struck members of the Defendant's race."
The record shows that the defendant struck one black member of the venire.
Of the forty people on the venire, six were black. The State struck five black venire persons: Albert L. Garrett, Willie J. Harrison, Jefferson Newell, Larry Simmons, and Vertie G. Simmons.
On voir dire, the following information was elicited. Harrison had known the defendant and his family "pretty well" for about five years. Larry Simmons had known the defendant for "a good 12 years" and had "spent 48 hours in jail with him." Garrett indicated that he would rather not sit on this case, and that he had worked with one of the defendant's nieces and that he had known the victim and his wife socially for four or five years. Newell had worked on the same shift with the victim's husband and knew him "fairly well." Vertie Simmons had been a juror on a civil case wherein the monetary award "went both ways." The State had thirteen peremptory challenges. It used its first, second, third, sixth, and twelfth challenges to remove blacks. The remaining eight challenges were used against persons not of the black race.
We accept the trial judge's finding that the defendant failed in the initial burden of persuasion of establishing a prima facie case of discrimination. In Ex parte Branch [Ms. 86-500, September 18, 1987], (Ala. 1987), our Supreme Court, in setting *Page 227 
forth some general guidelines for resolving the issue of racial discrimination in the use of peremptory jury challenges, noted:
 "The burden of persuasion is initially on the party alleging discriminatory use of peremptory challenges to establish a prima facie case of discrimination. In determining whether there is a prima facie case, the court is to consider 'all relevant circumstances' which could lead to an inference of discrimination. . . . The following are illustrative of the types of evidence that can be used to raise the inference of discrimination:"
* * * * * *
 "4. The type and manner of the offending attorney's questions and statements during voir dire, including nothing more than desultory voir dire.
. . . . .
 "5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. . . ."
Here, the trial judge examined "all relevant circumstances," including the questions to and the answers of the venire persons on voir dire, and concluded that the defendant had not established a prima facie case of discrimination. "InBatson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986)], the Court stated that '[w]e have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.' Batson, 476 U.S. at 97,106 S.Ct. at 1723." Branch, slip opinion at p. 24. In Branch, slip opinion at p. 25, the Supreme Court approved the proposition that an appellate court " ' "may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous," ' " quoting UnitedStates v. Mathews, 803 F.2d 325, 330 (7th Cir. 1986), as quoted by this Court in Branch v. State [Ms. 6 Div. 93, November 12, 1986] (Ala.Cr.App. 1986). We find no evidence that the trial judge's determination is clearly erroneous.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.