586 So.2d 31 (1991)
Ernest WHITTLESEY
v.
STATE.
CR 89-1554.
Court of Criminal Appeals of Alabama.
March 29, 1991.
Rehearing Denied May 17, 1991.
Certiorari Denied August 23, 1991.
Jeffrey C. Ezell of Phillips, Ezell & Kemmer, Phenix City, for appellant.
Don Siegelman, Atty. Gen., and Jack W. Willis, Asst. Atty. Gen., for the State.
Alabama Supreme Court 1901422.
TYSON, Judge.
Ernest Whittlesey was indicted for theft of property in the first degree, in violation of § 13A-8-3, Code of Alabama 1975. He entered a plea of not guilty by reason of insanity, mental disease, or defect.
Pursuant to a motion for psychiatric evaluation, Whittlesey was transported to Taylor Hardin Secure Medical Facility for evaluation. By order dated May 14, 1990, the circuit court found him to be incompetent to stand trial and in need of psychiatric treatment. After treatment, he was discharged from Taylor Hardin on June 20, 1990, and on June 26, 1990, his case was placed on the next criminal trial docket.
The jury returned a verdict of "guilty as charged in the indictment." On August 31, 1990, Whittlesey was sentenced under the Habitual Felony Offender Act to a term of 15 years' imprisonment, and was ordered to pay $25.00 to the Crime Victims' Compensation Fund and $2,500.00 in restitution. He appeals.
On August 27, 1989, Captain Dwayne Adams of the military police received a call concerning an automobile accident on the Fort Benning, Georgia military reservation. Upon responding to the call, he found no occupants in the car. A search was commenced to find the occupant of the vehicle, and 45 minutes later the appellant was seen elsewhere on the reservation wearing ragged, torn clothing. The officer stepped from his patrol car and motioned to the appellant, who in turn stated, "That's not my car."
Captain Adams observed scratches and blood on the appellant's forehead, arms, and clothing. Captain Adams received a call telling him to hold the appellant because the car which was involved in the accident had been reported stolen in Alabama. Michael and Dorothy Jones identified the wrecked automobile found at Fort Benning, Georgia, as belonging to Michael Jones.

*32 I
The appellant made a timely motion to quash the jury panel based on the allegation that the state used its peremptory strikes in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The court ruled there had been a prima facie showing that the state's peremptory challenges were used to discriminate against blacks. Therefore, the prosecutor gave the following reasons for his strikes:
"MR. WALDREP: My first strike, Your Honor, was Number 2 from the list, L.A. And based on the records which we keep in the District Attorney's Office on jurors as they have served on previous jury duty, Mr. A. has served before on a previous case, which, in the District Attorney's Office estimation, was a good case, and the jury in that instance found not guilty. Based on a previous not guilty verdict and vote by Mr. A., we have struck him at this time.
"THE COURT: Who is the next strike of a black?
"MR. WALDREP: My second strike was Number 6, which would be P.A. The same reason would hold. She had been a juror in a previous rape first case and had found not guilty. Based on that, we feel that we cannot leave her on the panel.
"My third strike was Number 42, which would be J.D. And based on his history, four cases that he has served on have resulted inwell, three of the four have been mistrials, two of which I tried. Another where Mr. D. was removed from the jury after the fact that the jury had been struck [sic]. We feel based on the mistrials and the past history, we cannot leave him on this panel.
"My fourth strike was Number 54, N.G. And in the Spring of 1988, Mr. G. had a case that went before the Spring Grand Jury on a charge of rape second. It was no billed at the time, but I am familiar with the particulars of the case and I believe that based upon the investigation, his association with the police and my knowledge of his past history, I could not afford to leave him on the panel today." (R. 12-13.)
After hearing the reasons, the court overruled this appellant's Batson motion.
As noted above, the appellant's reason for striking jurors number 2, 6, and 42 was that each had served as a juror before in a previous criminal case and either found the defendant not guilty or the cases resulted in mistrials.
In regard to prior jury service, this court in Warner v. State, [Ms. 3 Div. 945, Feb. 23, 1990], 1990 WL 44302 (Ala.Cr.App. 1990), held:
"Prior service as a juror in a criminal case may constitute a reasonable explanation. United States v. Power, 881 F.2d 733, 740 (9th Cir.1989) (`recently completed service on another jury'); Watkins v. State, 551 So.2d 421, 422-23 (Ala.Cr.App.1988) (`served on a jury ... where the defendant was found not guilty;' `served on two juries,' one civil and one criminal, neither of which were able to reach a verdict); Smith [v. State], 531 So.2d [1245] at 1248 [(1987)] (`sat on a jury in a criminal case that returned a verdict of not guilty'); Thomas v. State, 520 So.2d 223, 226 (Ala.Cr. App.1987) (`had been a juror on a civil case wherein the monetary award `went both ways'); Levert [v. State], 512 So.2d [790] at 795 [1987] (prior service in a criminal trial where the verdict was `in great contrast to the theory of the case presented by the prosecution')."
Therefore, prior service as a juror constitutes a sufficient race-neutral reason to strike.
The prosecutor's explanation for his last strike was due to the fact that this veniremember had been before a grand jury on a second degree rape charge. He was not indicted by the grand jury.
This court has held that connections with, or founded suspicions of, criminal activity constitute acceptable race-neutral reasons for the use of peremptory challenges by the state. Currin v. State, 535 So.2d 221, 224 (Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala.1988); Henderson v. *33 State, 583 So.2d 276 (Ala.Cr.App.1990). See also Warner v. State, [Ms. 3 Div. 945, Feb. 23, 1990], 1990 WL 44302 (Ala.Cr.App. 1990).
The trial judge found that the prosecutor did not exercise his peremptory jury strikes in a racially discriminatory manner. After our review of the record, we agree.

II
Secondly, this appellant contends that the trial court erred in allowing the admission of a statement made by the appellant upon the initial stop by the police. He insists that the statement was involuntary because of mental incompetency or insanity. However, the trial court overruled the motion to suppress.
During his investigation of the automobile accident, Captain Dwayne Adams, a member of the military police at Ft. Benning, Georgia, spotted the appellant 1.6 miles away from the accident. When approached by Captain Adams, the appellant spontaneously stated, "That's not my car." The captain asked no questions and did not attempt to take a statement from the appellant. The statement was spontaneous and unsolicited and, therefore, was admissible. See Bedingfield v. State, 47 Ala.App. 677, 260 So.2d 408 (1972).
However, the appellant argues that the statement was involuntary because of a mental incompetency or insanity.
In Sullivan v. State, 666 F.2d 478 (11th Cir.1982), it was held:
"It is settled that statements or confessions made during a time of mental incompetency or insanity are involuntary and, consequently, inadmissible. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Blackburn v. State, 80 S.Ct. 274, 361 U.S. 199, 4 L.Ed.2d 242 (1960). In deciding the ultimate issue of voluntariness, though, we may substitute our independent judgment after a review of the entire record. Jurek v. Estelle, 623 F.2d 929 (5th Cir. 1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 and 450 U.S. 1014, 101 S.Ct. 1724, 68 L.Ed.2d 214 (1981). See Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); Brown v. Allen, 344 U.S. 443, 507, 73 S.Ct. 397, 434, 97 L.Ed. 469 (1953) (opinion by J. Frankfurter). Voluntariness is premised on the totality of the circumstances. Blackburn v. State, 361 U.S. at 206, 80 S.Ct. at 279, 4 L.Ed.2d at 248."
However, in this cause there was no persuasive evidence or strong probability of this appellant's insanity. See Blackburn v. State, 361 U.S. at 207, 209, 80 S.Ct. at 281, 4 L.Ed.2d at 248, 250 (compelling evidence and strong probability of insanity demonstrated the involuntariness of the confession).
There was no medical evidence of this appellant's insanity presented during the suppression hearing. Captain Adams was the only person to testify at the suppression hearing. Captain Adams testified that he did not question this appellant after his initial statement. Mere emotionalism and confusion do not indicate a finding of mental incompetency or insanity. At the time of the suppression hearing there was no medical testimony as to the competency of the appellant at the time he made the statement. Thus, there was no evidence that the appellant was mentally incapacitated at the time of the statement. Therefore, the decision of the trial court not to suppress the statement was correct.

III
Last, the appellant argues that the evidence was not sufficient to support the conviction. He argues that the verdict was based on mere guesswork.
The standard for determining the sufficiency of evidence was set out by this court in Linzy v. State, 455 So.2d 260 (Ala.Cr. App.1984):
"The standard of review in determining sufficiency of evidence is whether evidence existed at the time appellant's motion for acquittal was made, from which the jury could by fair inference find the accused guilty. Stewart v. State, 350 So.2d 764 (Ala.Crim.App.1977), Hayes v. State, 395 So.2d 127 (Ala.Crim. *34 App.), writ denied, Ex parte Hayes, 395 So.2d 150 (Ala.1981). Stated differently, the test is `whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis, but whether a jury might reasonably so conclude.' Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979); United States v. Black, 497 F.2d 1039 (5th Cir.1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971). In deciding this issue, we are required to view the evidence presented in the light most favorable to the state. Hayes, supra; Bass v. State, 55 Ala. App. 88, 313 So.2d 208 (1975).
"`Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court.' Cumbo [v. State, 368 So.2d 871 (Ala.Crim.App. 1978) ], supra; Cannon v. State, 17 Ala. App. 82, 81 So. 860 (1919). Our function is not to be factfinders, however tempting that may sometimes be. We must not substitute ourselves for jurors, nor play their role in the criminal process. Jury verdicts should not be disturbed unless they are not based upon evidence sufficient to meet the test set out above."
After a review of the record, we find sufficient evidence from which the jury might reasonably exclude every reasonable hypothesis other than that of the appellant's guilt in this cause.
For the reasons stated, this cause is due to be and it is hereby affirmed.
AFFIRMED.
All Judges concur.
BOWEN, J., concurs in result only with opinion.
BOWEN, Judge, concurring in result.
Appellant's statement to Captain Adams was not the product of police coercion or inducement because it was "spontaneous and unsolicited." Therefore, regardless of appellant's mental condition, the statement was "voluntary" within the meaning of the Due Process Clause of the United States Constitution. Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). A statement made by one who is insane is constitutionally "voluntary" unless it is the product of "coercive police activity." Connelly, 479 U.S. at 167, 170, 107 S.Ct. at 522, 523.
Notwithstanding its "voluntariness," a confession made during a time of insanity may be "unreliable." Connelly, 479 U.S. at 167, 107 S.Ct. at 521-22.
"[T]he Constitution rightly leaves [the unreliability] inquiry to be resolved by state laws governing the admission of evidence and erects no standard of its own in this area. A statement rendered by one [who is insane] might be proved to be quite unreliable, but this is a matter to be governed by the evidentiary laws of the forum, and not by the Due Process Clause of the Fourteenth Amendment."
Id. (Emphasis added and Citation omitted.)
So far as I know, the appellate courts of Alabama have not, since Connelly, determined whether a confession made by one who is insane is inadmissible under Alabama law alone. I write separately to point out that, although the majority seems to assume the inadmissibility of a statement made by an insane person, that question still has not been decided in Alabama.